## Riddell *v.* Philadelphia Rapid Transit Co., Appellant.

*Trespass—Malicious prosecution—Master and servant—Implied authority.*

In the trial of an action of trespass against a street railway company for false arrest and malicious prosecution, it appeared that a "starter," employed by the defendant company, had forcibly prevented the plaintiff from boarding a car, because he left his place in line of waiting passengers, and subsequently had him arrested and prosecuted on a groundless charge for assault and battery.

*Held:* That for any undue violence inflicted by the "starter" in the course of his employment the defendant company would be liable; but the prosecution for assault and battery upon the starter, being a purely personal matter, and not an offense committed against the company or affecting its rights, a judgment upon a verdict for damages, resulting from both the arrest and the malicious prosecution, was erroneous.

Under such circumstances, the arrest and prosecution was not within the implied authority of its employee, and the defendant was not liable for any damages which may have been awarded from any injury which flowed from a malicious prosecution.

*Appeals—Assignments of error—Refusal of judgment n. o. v.— New trials.*

Where the error complained of can be reached by an assignment, based on the refusal of judgment non obstante veredicto, a new trial may be ordered in appropriate cases on appeal.

176, (1922).] Statement of Facts—Opinion of the Court.

Argued October 4, 1922. Appeal, No. 45, Oct. T., 1922, by defendant, from judgment of C. P. No. 2, Phila. Co., March T., 1920, No. 2738, on verdict for plaintiff in the case of James Riddell v. Philadelphia Rapid Transit Company. Before PORTER, HENDERSON, TREXLER, KELLER and GAWTHROP, JJ. Reversed.

Trespass for damages for malicious prosecution and false arrest. Before STERN, J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff for $500 and judgment thereon. Defendant appealed.

*Error assigned,* among others, was refusal of defendant's motion for judgment non obstante veredicto.

*Marshall A. Coyne,* for appellant.

*Jerome Bennett,* and with him *Henry Wessel, Jr.,* for appellee.

OPINION BY GAWTHROP, J., November 23, 1922:

Plaintiff brought an action against defendant for false arrest and malicious prosecution. The jury rendered a verdict in his favor and this appeal is from the judgment entered thereon. The errors assigned are the disaffirming of a point for binding instructions and the refusal to enter judgment for defendant non obstante veredicto. Therefore all the evidence and inferences therefrom favorable to plaintiff must be taken as true and all unfavorable to him must be rejected. Viewed in this light, the testimony warrants the following statement of facts: In June, 1919, at about 6:30 a. m. plaintiff was waiting to become a passenger on a car of defendant at Fortieth and Market streets, Philadelphia. At that time and place there were many persons waiting to enter the cars of defendant to go to their place of employment. De-

fendant had stationed there an employee called a "starter," whose duty it was to keep the crowds orderly in getting in and out of the cars, to see that the cars were loaded quickly, to collect the transfers and start the cars. On the occasion with which we are concerned, the intending passengers were formed in four lines. Plaintiff was about twentieth in his line when a car stopped to receive passengers. As the persons ahead of him did not move forward when the doors of the car were opened, plaintiff stepped out of line, passed to the front, handed his transfer to the starter and stepped onto the car of defendant near the motorman. Whereupon the starter, without saying a word to plaintiff, grabbed him and pulled him off, threw him in the street and used violent language toward him. Just then a policeman appeared and the starter said to him: "Lock him up, I well appear against him later." Plaintiff was arrested, charged with assault and battery upon the starter and tried before a jury and acquitted. There was no personal animosity between plaintiff and the starter and the sole reason for the assault and arrest was the fact that plaintiff had stepped out of line in order to get on the car. The action of the starter in causing the arrest and prosecuting the case was not expressly authorized by defendant, nor subsequently ratified or adopted by it. Defendant had no knowledge of the transaction and repudiates the employee's action. By its statement of the question involved, it raises the point on which the disposition of the case turns, viz: Was the arrest and prosecution of plaintiff by defendant's employee within his implied authority so as to bind defendant?

In determining such a question each case must stand on its own facts and frequently the question will be one of serious difficulty and doubt. A principal may be held liable for the act of his agent in instituting a malicious prosecution, but the inference of authority to arrest or prosecute does not arise from the mere fact of agency: Markley v. Snow, 207 Pa. 447. The general rule is that

a master is liable in a civil suit for the wrongful acts of his servants, if those acts are done in the course of his employment in his master's service. In Greb v. Penna. R. R. Co., 41 Pa. Superior Ct. 61, the statement of the rule as given by Mr. Justice ANDREWS in Rounds v. D. & H. R. R. Co., 64 N. Y. 129, was quoted with approval: "It is in general sufficient to make the master responsible that he gave to the servant an authority, or made it his duty, to act in respect to the business in which he was engaged when the wrong was committed, and that the act complained of was done in the course of his employment. The master in that case will be deemed to have consented to and authorized the act of the servant, and he will not be excused from liability although the servant abused his authority, or was reckless in the performance of his duty, or inflicted an unnecessary injury in executing his master's orders. The master who puts the servant in a place of trust or responsibility, and commits to him the management of his business or the care of his property, is justly held responsible when the servant, through lack of judgment or discretion, or from infirmity of temper, or under the influence of passion aroused by the circumstances and the occasion, goes beyond the strict line of his duty or authority and inflicts an injustifiable injury upon another." Not every deviation of the servant from the strict line of his duty will so interrupt the course of employment as to suspend liability. "But, where there is not merely deviation, but a total departure from the course of the master's business, so that the servant may be said to be on a 'frolic of his own,' the master is no longer answerable for the servant's conduct": Greb v. Penna. R. R. Co., supra, citing Pollock on Torts (B. L. ed.) *74. For a wilful or intentional trespass by an employee outside the line of his duty under his employment, it is settled that the employer is not responsible, even though it be committed while the servant is in the service of his employer: McFarlan v. Penna. R. R. Co., 199 Pa. 408. In that case the defend-

ant was held liable for an assault by the conductor upon an intending passenger in the act of entering the car, because he was within the authority and control of the conductor in the course of the latter's employment. In Rudgeair v. Reading Traction Co., 180 Pa. 333, a motorman who left his post of duty on his car and assaulted a teamster driving on the track ahead, who refused to turn off, was held not to be acting within the scope of his employment and therefore the company was not liable. These two cases illustrate the distinction in principle between acts of a servant which are, and acts which are not, done in the course of his employment.

In Canon, Appellant, v. Sharon & Wheatland St. Ry. Co., 216 Pa. 408, the action was in trespass for malicious prosecution. The plaintiff was employed as a conductor by the defendant; the general superintendent of the defendant made the complaint against the plaintiff, charging him with embezzlement of the company's money. At a subsequent trial the plaintiff was acquitted. The judgment of nonsuit in the action for malicious prosecution was affirmed on the ground that there was no evidence as to the scope of the authority of the superintendent or of knowledge by the defendant of the prosecution, and that it was not within the superintendent's implied power to commit the company to a prosecution for an offense alleged to have been already committed.

In Markley v. Snow, 207 Pa. 447, the plaintiff was arrested at the instance of defendant's superintendent and paymaster for setting fire to a barn of defendant. After his discharge the plaintiff brought suit against the defendant and the superintendent and the paymaster for malicious prosecution and obtained a verdict. It did not appear that the defendant had consented to the prosecution or had any knowledge of it. The arrest was not made until three months after the barn had been burned and, whatever the superintendent and paymaster did, was wholly at their instance. The judgment entered on the verdict for plaintiff was reversed and judgment was

entered for defendant on the ground that generally the
duty of superintendence does not carry with it the duty
to arrest or prosecute, the court saying: "The authority
may be implied when the arrest is made by the agent in
the absence of the principal for the protection of prop-
erty that is in danger, and in some cases it has been in-
ferred when the arrest was to recover the property back,
or where the crime was at the time being perpetrated.
But where the act is done for the punishment of the sup-
posed criminal, or for the vindication of the law, it is
not the act of the principal and does not subject him to
liability. This principle has been uniformly recognized
in the decisions on the subject, and whatever lack of har-
mony there is in the cases has resulted from the diffi-
culty of applying it to the particular facts." In the
opinion just quoted, the court cites numerous authorities
from other jurisdictions, in which the principal was held
liable for an unlawful arrest, in all of which, however,
the arrest was made at the time of the commission of the
alleged offense. The statement is there made that the
trend of decision is against holding the principal liable
when the arrest has been made after the supposed offense
has been committed and not for the protection of his
property or interests. In such cases the agent is pre-
sumed to have acted on his own account for the vindi-
cation of justice and the punishment of the offender.

In Duggan, Appellant, v. B. & O. R. R., 159 Pa. 248,
the plaintiff sued in trespass for illegal arrest and re-
moval from a railroad train. Malicious prosecution was
not involved. Plaintiff was a passenger. The arrest was
pursuant to a telegram sent to the conductor of the train
by one of its detective agents. When the train stopped
at McKeesport some police officers got on board the
train, showed the conductor the telegram and there was
evidence that the conductor took part in the arrest. It
was held, reversing the court below, that the subject of
the telegram was within the general line of conductor's
duty and if he took part in the illegal arrest the defend-

ant was liable for the consequences of his act, the court saying: "The case must therefore go to the jury to determine what he did, and whether, in accordance with the principles of law, it was a proper performance of his duty."

In Rohrback v. Penna. R. R. Co., 244 Pa. 132, it was held as a matter of law that the employer could not be held liable for a wilful assault committed by a porter upon a passenger for the purpose of punishing the passenger for personal insult, because there was no evidence to show what the duties of the porter were, while it was manifest that the assault was a wilful act without other purpose than to inflict injury and punishment for personal insult. That case may be distinguished from McFarlan v. Penna. R. R. Co., 199 Pa. 408, on the ground that in the McFarlan case there was evidence that, although the conductor's act amounted to an unprovoked assault, it was done in the supposed performance of his duty in the orderly management of persons entering and leaving the train.

The case before us, up to the point of the prosecution following the arrest, is on principle strikingly similar to the McFarlan case, because up to that time the defendant's employee was acting in the performance of his duties. Plaintiff was an intending passenger in the act of entering the car. He was within the authority and control of the starter in the course of his employment, which was to oversee the loading of the cars and enforce the regulations regarding the same. It was the company's duty to protect a passenger against the assaults of its servants while engaged in their assigned and appropriate duties. The act of the starter in pulling plaintiff from the car resulted from plaintiff's act in stepping out of the line of intending passengers and passing out of turn onto the car. For any undue violence inflicted by the starter under such circumstances, defendant would be liable. The starter's act was done in attempting to perform the service which the master had em-

ployed him to do and if, in performing it, he caused an arrest on behalf of the company, the company would be responsible. The doing violence to plaintiff's person and the calling upon the policeman to make the arrest were substantially one transaction. Until after the arrest no reason for the arrest appears, except the conduct of plaintiff in getting on the car in a manner which the starter believed to amount to an interference with good order in the place under his control. The fact is, however, that the prosecution which followed the arrest was for an assault and battery upon the starter, a purely personal matter and not an offense alleged to have been committed against the company or affecting its rights. This seems to negative the conclusion that what the starter did following the arrest was within the line of his duty in serving defendant or an act which defendant reasonably could have anticipated. By carrying on such a prosecution, the employee stepped outside the bounds of his authority, started "on a frolic of his own," and made himself alone responsible in a suit which might be brought for malicious prosecution. This conclusion follows logically under the law as declared by the appellate courts in this State.

The judgment here is upon a verdict for damages resulting both from the arrest and the malicious prosecution. For the reasons herein set forth, defendant is not liable for any damages which may have been awarded for any injury which flowed from the malicious prosecution. The error can be reached by the second assignment based on the refusal of judgment n. o. v.; in such case a new trial may be ordered in appropriate cases on appeal: Northern Tr. Co., Exr., v. Huber, 274 Pa. 329. But binding instructions could not have been granted on request of defendant and the first assignment is overruled. The second is sustained.

The judgment is reversed and a venire facias de novo awarded.