

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-21-2009

# Kossler v. Crisanti

Precedential or Non-Precedential: Precedential

Docket No. 06-3241

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Kossler v. Crisanti" (2009). *2009 Decisions*. Paper 1431.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1431

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 06-3241

———

MICHAEL KOSSLER,

Appellant

v.

STEVEN CRISANTI;
DONZI'S BAR

———

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 03-cv-00679)
District Judge:  Honorable Terrence F. McVerry

———

Submitted on Initial Rehearing En Banc
January 28, 2009

BEFORE:  SCIRICA, *Chief Judge*, SLOVITER, McKEE,
RENDELL, BARRY, AMBRO, FUENTES,
SMITH, FISHER, CHAGARES, JORDAN,
HARDIMAN and ALDISERT, *Circuit Judges*.

(Filed: April 21, 2009)

Timothy P. O'Brien
Suite 1705, Allegheny Building
429 Forbes Avenue
Pittsburgh, PA  15219
        *Attorney for Appellant*

Bryan Campbell
220 Grant Street, 6th Floor
Pittsburgh, PA  15219
        *Attorney for Appellee, Steven Crisanti*

Michael Fitzpatrick
850 Washington Avenue
Carnegie, PA  15106
        *Attorney for Appellee, Donzi's Bar*

Nancy Winkelman
Schnader Harrison Segal & Lewis
1600 Market Street, Suite 3600
Philadelphia, PA  19103
        *Attorney for Amicus Appellant, ACLU PA*

---

OPINION

---

FISHER, *Circuit Judge*, with whom SCIRICA, *Chief Judge*, BARRY, FUENTES, SMITH, CHAGARES, JORDAN and HARDIMAN, *Circuit Judges*, join.

This appeal raises a discrete issue involving a malicious prosecution claim brought under 42 U.S.C. § 1983 and Pennsylvania state law: Whether a conviction for disorderly conduct and a contemporaneous acquittal for aggravated assault and public intoxication under the relevant Pennsylvania statutes constitute a favorable termination of the state criminal proceeding against the plaintiff whose intentional physical contact against a municipal police officer underlies all three offenses. For the reasons that follow, under this particular factual scenario, the plaintiff's criminal proceeding did not end in his favor. Accordingly, we will affirm the order of the District Court granting summary judgment, as well as its order denying reconsideration.

## I.

### A.     The Events of the Night of the Fight

At approximately 11:00 p.m. on November 11, 2001, thirty-nine-year-old X-ray technician Michael Kossler, his friend John Trelecki, and one other friend arrived at Donzi's Bar in Pittsburgh's Strip District and socialized, talked, walked around, and danced. While there, Kossler had a couple of beers but claims not to have consumed any alcohol prior to arriving at Donzi's.

3

Steven Crisanti, a City of Pittsburgh police officer, was working an off-duty detail, or secondary employment position,[1] that night at Donzi's, where he had worked for about two years. With the exception of not wearing his official police baseball cap, Crisanti was dressed in his full police uniform. These secondary employment officers were paid in cash each night by Donzi's parent corporation.

Kossler and Trelecki left Donzi's at approximately 2:00 a.m. Upon exiting the bar, the two men walked up a ramp toward a parking lot located next to Donzi's entrance. They had not yet arrived in the parking lot when a fight broke out on the sidewalk at the top of the ramp. When the fight started, Crisanti was standing in the parking lot.

---

[1]The Pittsburgh Bureau of Police, in Order Number 29-1, defines secondary employment as "[a]ny employment that is conditioned on the actual or potential use of law enforcement powers by the police officer employee." Order Number 29-1 also states that City of Pittsburgh police officers, "while engaged in secondary employment, will conduct themselves as though they were on-duty, and will be subject to all department rules, regulations, policies and procedures set forth by the Pittsburgh Bureau of Police." Additionally, individual officers must obtain approval for secondary employment from the Pittsburgh Bureau of Police, and approval is contingent upon the officer's "good standing" with the Bureau, as well as other qualifications.

Crisanti and Kossler provide different accounts of what occurred next. According to Crisanti, when he tried to go to break up the fight, Kossler grabbed him from behind and twisted him around. Crisanti responded by pushing Kossler away and ran toward the fight, but Donzi's security had already broken it up before Crisanti reached it. According to Trelecki, he and Crisanti were friends, and he had tapped Crisanti on the back to let him know that he was going to help him in breaking up the fight. Kossler confirms Trelecki's version of the events by stating that he was not the one who touched or grabbed Crisanti because he was standing near the valet stand several feet away waiting for his car.

With respect to what happened after the fight ended, Crisanti states that he approached Kossler to ask why Kossler had grabbed him and to warn Kossler not to touch a police officer again. At that point, Kossler became irate, "came at" Crisanti, and bent his middle finger and forefinger completely back on Crisanti's left hand. While Crisanti tried to pull his fingers free, he grabbed his pepper spray with his other hand and sprayed Kossler, at which point Kossler released Crisanti's left hand.

Kossler, in turn, states that Crisanti was yelling "in a loud, screaming, irate voice" that Kossler should not have touched him. Crisanti also pointed his finger in Kossler's face and forced Kossler to back up. Afraid that he would be slapped or punched, Kossler told Crisanti that he had recently undergone surgery on his nose and asked Crisanti: "[P]lease, get your hand out of my face." When Crisanti touched Kossler's nose, Kossler "moved" or "pushed" Crisanti's hand away in a non-violent

5

manner.  Then Crisanti sprayed Kossler, and handcuffed and arrested him.

### B.    Crisanti's Police Report

Following the incident, Crisanti completed and filed a City of Pittsburgh Bureau of Police Offense / Incident Report, which identified Kossler as the aggressor and recounted:

> "As I tried to break up the fight another w/m (later identified as Kossler, Michael) grabbed me and pulled me away from the two actors.  As the security men broke up the fight, I approached Kossler, he became very loud yelling 'fuck you' he then started charging at me, I put my arm out ordering h[im] to 'stop,' but he kept coming and grab[bed] a hold of my left hand bending them backwards.  I tried to pull my hand away, but he would not let go. . . .  P.O. is going to [hospital] for treatment of my left hand.  Nature of injury was swelling to my knuckles, middle, and ring fingers.  Actor (Kossler) was inside the bar and smelled of alcohol."

Kossler was charged with the first-degree felony of aggravated assault and the summary offenses of disorderly conduct and public intoxication.  Crisanti's police report listed "A.A. 2702(a)(2), 5503 Disorderly, Public Intox 5505" to denote the Pennsylvania statutory provisions covering each of the offenses charged.  On November 21, 2001, Kossler appeared for a preliminary hearing before a state court magistrate.  Although

6

only portions of the hearing transcript are contained in the record, counsel at oral argument stated that it was during this hearing that Kossler's aggravated assault charge was reduced from the first-degree felony under section 2702(a)(2) to the second-degree felony under section 2702(a)(3).

## C. Bench Trial Before Pennsylvania Common Pleas Judge

In a non-jury trial before Pennsylvania Court of Common Pleas Judge Robert E. Colville on July 18, 2002, Kossler was found not guilty of aggravated assault and public intoxication, but was found guilty of disorderly conduct and fined one hundred dollars. Judge Colville explained:

> "There were an awful lot of misperceptions going on that evening in the parking lot. Basically, there were a lot of people moving around and there was a lot of involvement and anger and people were drinking, and the consensus of that is nobody knows precisely exactly what happened.
>
> My own personal belief in this, I don't see any misdemeanors or any felonies, it's not an aggravated assault, it isn't, simply isn't.
>
> I'm going to find him guilty of a summary offense of DC.
>
> Basically, you were in the wrong place, wrong time and the officer addressed you, when he came

over, whether he was mistaken or not, when he's putting his hand up he's obviously putting himself at risk trying to break up what he feels – it may well have been your friend who touched him but he doesn't have time seeing which one of you did it, he's going to respond, he just is, and he's going to be upset, whether appropriate or not, having been in his uniform, and having done this I understand why he did what he did, he was upset, that's why he came to you, he doesn't recognize you, that's another fact, but at this point you have to respond, not by taking – hitting his hand away, but it's obvious he's put out, he's the only one there that hasn't been drinking all night, and he's the only one that has to be responsible.

I think he acted reasonable; I think it got out of hand, but the charges don't fit the crime. I mean, you put yourself in a situation whereby striking the officer's hand away from him, that alone I'm going to find you summary [sic] of disorderly conduct. I'm going to charge you a hundred bucks."

### D.    Procedural History in Federal District Court

On May 13, 2003, Kossler filed this lawsuit against Crisanti and Donzi's for excessive force, false arrest, and malicious prosecution pursuant to 42 U.S.C. § 1983. The complaint also stated Pennsylvania common law claims against the defendants for assault and battery, false arrest, and malicious

8

prosecution. There was also a § 1983 failure to train claim against Donzi's.

Upon completion of discovery, on August 1, 2005, the District Court granted partial summary judgment in favor of Donzi's on the malicious prosecution and false arrest claims brought under both federal and state law, as well as on the failure to train claim. It denied summary judgment on the other claims, namely the excessive force and assault and battery claims.

On August 23, 2005, the District Court denied Kossler's motion for reconsideration in a separate memorandum opinion. We then denied Kossler's motion for allowance of an immediate interlocutory appeal. Before the remaining counts went to trial, on June 2, 2006, the parties stipulated to the dismissal of those counts with prejudice, and the District Court entered an order on June 5, 2006, reflecting this stipulation. Kossler timely appealed what he believed to be the District Court's final judgment, and raised arguments in his merits briefs related only to his malicious prosecution claims.

Following oral argument before a panel of this Court, we determined there was a defect in jurisdiction because of the lack of a final judgment. We informed the parties that the District Court's June 2006 order granted the parties' stipulation only as to the excessive force and assault and battery claims; Kossler's false arrest claim against Crisanti remained open because it was not disposed of by any of the District Court's orders; and the actual "separate final judgment" pursuant to a November 2005 order of the District Court had not been entered. Because these

jurisdictional defects were capable of quick resolution, we instructed the parties to return to the District Court to remedy them. The parties stipulated to an entry of judgment on the claims that remained open and, on August 13, 2008, the District Court entered final judgment as to those claims. In light of the District Court's orders, Kossler's notice of appeal ripened, and thus a subsequent notice of appeal was not required.

## II.

The District Court had jurisdiction over Kossler's federal law claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and over his state law claims pursuant to 28 U.S.C. § 1367(a). As a result of the steps taken by the parties to cure the jurisdictional defects, we now have jurisdiction pursuant to 28 U.S.C. § 1291. "Our standard of review applicable to an order granting summary judgment is plenary." *Nasir v. Morgan*, 350 F.3d 366, 368 (3d Cir. 2003). We may affirm the order when the moving party is entitled to judgment as a matter of law, with the facts viewed in the light most favorable to the non-moving party. *Nicini v. Morra*, 212 F.3d 798, 805-06 (3d Cir. 2000) (en banc). Further, "[w]e may affirm the District Court on any grounds supported by the record." *Id.* at 805.

## III.

### A.     No Favorable Termination Under the Factual Circumstances of This Case

"To prove malicious prosecution under [§] 1983, a plaintiff must show that:

10

(1) the defendants initiated a criminal proceeding;

(2) the criminal proceeding ended in plaintiff's favor;

(3) the proceeding was initiated without probable cause;

(4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and

(5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding."

*Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003).[2] For Kossler to prevail, he needed to satisfy each of the elements of malicious prosecution, and thus the District Court's ruling that Kossler failed to establish the second element – the favorable termination of his underlying criminal proceeding – was fatal to his claims. Our agreement with the District Court's

---

[2]The first four elements are the same under Pennsylvania law. *See Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 791 (3d Cir. 2000).

11

ruling on this element suffices to affirm the District Court's order in toto.[3]

The purpose of the favorable termination requirement is to avoid "the possibility of the claimant [*sic*] succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction." *Heck v. Humphrey*, 512 U.S. 477, 484 (1994) (alteration in original) (internal quotation marks omitted). Consistent with this purpose, we have held that a prior criminal case must have been disposed of in a way that indicates the innocence of the accused in order to satisfy the favorable termination element.[4] *Donahue v. Gavin*, 280 F.3d 371, 383 (3d

---

[3]Judge Aldisert discusses a difference in the interpretation of the first element – whether the defendants initiated a criminal proceeding – in the context of state malicious prosecution claims versus federal malicious prosecution claims. Because we conclude that Kossler failed to satisfy the favorable termination element, we need not reach the issue discussed by Judge Aldisert as to whether, in a state malicious prosecution claim under Pennsylvania law, the first element can be established on the basis of respondeat superior liability.

[4]This suffices to respond to Judge Aldisert's view that a summary offense conviction does not "carr[y] a presumption that the underlying events leading to the conviction actually occurred," *Phoenixville Area Sch. Dist. v. Unemployment Comp.*

Cir. 2002); *see also Gilles v. Davis*, 427 F.3d 197, 211 (3d Cir. 2005) (holding that expungement under the Accelerated Rehabilitative Disposition program was not a favorable termination because the program "imposes several burdens upon the criminal defendant not consistent with innocence"). Accordingly, a malicious prosecution claim cannot be predicated on an underlying criminal proceeding which terminated in a manner not indicative of the innocence of the accused. A plaintiff may attempt to indicate his innocence by demonstrating

---

*Bd.*, 596 A.2d 889, 892 (Pa. Commw. Ct. 1991), and therefore a malicious prosecution claim based on the acquittal of a felony can proceed. Our reading of Pennsylvania caselaw suggests that the "no presumption" proposition is limited to situations in which a private party attempts to use a defendant's summary offense conviction to establish subsequent civil liability against him. *See Hurtt v. Stirone*, 206 A.2d 624, 627 (Pa. 1965) (reasoning that "in cases involving the record of conviction of relatively minor matters . . . it is not obvious that the defendant has taken advantage of his day in court, and it would be unreasonable and unrealistic to say he waived that right as to a matter (civil liability), which was probably not within contemplation at the time of conviction") (cited in *Phoenixville*, 596 A.2d at 892). Regardless, whatever the conviction of a summary offense shows or does not show, it indubitably does not indicate "the innocence of the accused." This is especially true in light of Judge Colville's detailed factual findings, which concluded, inter alia, that Kossler was guilty of "striking the officer's hand away from him." *See* discussion *supra* Part I.C.

13

that his prior criminal proceeding terminated in one of the following ways:

> "(a)   a discharge by a magistrate at a preliminary hearing, or
>
> (b)   the refusal of a grand jury to indict, or
>
> (c)   the formal abandonment of the proceedings by the public prosecutor, or
>
> (d)   the quashing of an indictment or information, or
>
> (e)   an acquittal, or
>
> (f)   a final order in favor of the accused by a trial or appellate court."

*Donahue*, 280 F.3d at 383 (internal quotation marks and emphasis omitted); *accord Haefner v. Burkey*, 626 A.2d 519, 521 (Pa. 1993). In the present case, Kossler relies upon his acquittal as the only basis for arguing that he obtained a favorable termination.

Kossler's argument is problematic because his acquittal is accompanied by a contemporaneous conviction at the same proceeding. We are thus faced with a question of first impression in this Circuit: Whether acquittal on at least one criminal charge constitutes "favorable termination" for the purpose of a subsequent malicious prosecution claim, when the

14

charge arose out of the same act for which the plaintiff was convicted on a different charge during the same criminal prosecution. On these facts, we conclude that this question should be answered in the negative. As an initial observation, we note that various authorities refer to the favorable termination of a "proceeding," not merely a "charge" or "offense." *See Marasco*, 318 F.3d at 521; *Haefner*, 626 A.2d at 521; W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 119 (5th ed. 1984); 52 Am. Jur. 2d *Malicious Prosecution* § 32 (Supp. 2007) ("In the context of a malicious prosecution action, to determine whether a party has received a favorable termination in the underlying case, the court considers the *judgment as a whole* in the prior action; . . . the termination must reflect the merits of the action and the plaintiff's innocence of the *misconduct* alleged in the lawsuit." (emphasis added)). Therefore, the favorable termination of some but not all individual charges does not necessarily establish the favorable termination of the criminal proceeding as a whole.

Rather we conclude that, upon examination of the entire criminal proceeding, the judgment must indicate the plaintiff's innocence of the alleged misconduct underlying the offenses charged. In urging us not to hold that "the favorable termination element . . . categorically requires the plaintiff to show that all of the criminal charges were decided in his favor," Kossler himself argues (correctly) that the result "depend[s] on the particular circumstances." The argument goes both ways: The favorable termination element is not categorically satisfied whenever the plaintiff is acquitted of just one of several charges in the same proceeding. When the circumstances – both the offenses as stated in the statute and the underlying facts of the

15

case – indicate that the judgment as a whole does not reflect the plaintiff's innocence, then the plaintiff fails to establish the favorable termination element.

Beginning with the first part of this inquiry, an analysis of the offenses charged reveals that under Pennsylvania law, a person is guilty of the first-degree felony of aggravated assault if he "attempts to cause or intentionally, knowingly or recklessly causes serious bodily injury to [a police officer] while in the performance of duty." 18 Pa. Cons. Stat. Ann. § 2702(a)(2). A person is guilty of the second-degree felony of aggravated assault if he "attempts to cause or intentionally or knowingly causes bodily injury to [a police officer] in the performance of duty." *Id*. § 2702(a)(3). A person is guilty of the summary offense of disorderly conduct if, "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

(1) engages in fighting or threatening, or in violent or tumultuous behavior;

(2) makes unreasonable noise;

(3) uses obscene language, or makes an obscene gesture; or

(4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor."

16

*Id.* § 5503(a). Finally, a person is guilty of the summary offense of public intoxication "if he appears in any public place manifestly under the influence of alcohol or a controlled substance . . . to the degree that he may endanger himself or other persons or property, or annoy persons in his vicinity." *Id.* § 5505. Although the summary offenses are not lesser-included offenses of the felonies, nor do they share common elements with them, the analysis does not end by merely examining the relevant criminal statutes on their face, but rather requires an inquiry into the underlying conduct that the charges sought to punish.[5]

Proceeding to the second part of the inquiry, we conclude the District Court correctly found that "the charge of aggravated assault was predicated on the same factual basis as the charge of disorderly conduct, i.e., the altercation between Kossler and Crisanti. . . . Kossler was clearly guilty of some wrongdoing in the altercation notwithstanding the fact that Judge Colville found that his wrongdoing did not amount to aggravated

---

[5]While we are not faced with lesser-included offenses here, overcharging in that context does not usually result in a subsequent malicious prosecution action. *See* Tracey L. Meares, *Rewards for Good Behavior: Influencing Prosecutorial Discretion and Conduct with Financial Incentives*, 64 Fordham L. Rev. 851, 868-69 (1995). As we will explain, the offenses here, while not overlapping, do aim at punishing the same underlying misconduct. Therefore, unlike amicus, we do not foresee the rather benign overcharging in this case leading to a slippery slope of more abusive overcharging in future cases.

assault." Indeed, the misconduct giving rise to the three offenses with which Kossler was charged occurred in the moment after Donzi's security had broken up the preceding fight, when Kossler intentionally made physical contact with Crisanti's left hand with enough force that Crisanti sought medical treatment afterward. As already noted, Judge Colville found Kossler guilty of striking Crisanti's hand away during that moment, and Kossler himself admitted to having consumed alcohol at Donzi's, so these are not disputed issues of fact. Further, Kossler does not point to any separate conduct (such as making unreasonable noise or using obscene language, *see* 18 Pa. Cons. Stat. Ann. § 5503(a)) for which he was charged.

On this indivisible factual basis, Judge Colville found Kossler guilty of disorderly conduct and imposed a fine upon him. These particular circumstances indicate that the judgment as a whole that resulted from the bench trial, which resolved all the charges aimed at punishing Kossler's role in the altercation, did not reflect Kossler's innocence on the night of the fight. As a result, Kossler's acquittal on the aggravated assault and public intoxication charges cannot be divorced from his simultaneous conviction for disorderly conduct when all three charges arose from the same course of conduct. Therefore, we must conclude that the state criminal proceeding – the entirety of which resolved Kossler's guilt and punishment for intentionally making physical contact with a city police officer after consuming alcohol – did not end in Kossler's favor, even when we view the facts in the light most favorable to him.

Amicus argues that there is no conflict between Kossler's conviction for disorderly conduct and a civil judgment in his

18

favor for malicious prosecution on the charges of which he was acquitted. We disagree. As already explained, Kossler's conviction demonstrates his guilt for striking Crisanti, so a finding in federal court that the defendants maliciously prosecuted Kossler for the same conduct underlying the aggravated assault and public intoxication charges does indeed conflict with Kossler's state court conviction. Finality, comity, and federalism all counsel a collateral federal court to stay its hand before undoing the original state court's proceeding. *See, e.g.*, *Heck*, 512 U.S. at 484-85; *Osborne v. Dist. Attorney's Office*, 423 F.3d 1050, 1054-55 (9th Cir. 2005); *Olsen v. Correiro*, 189 F.3d 52, 69-70 (1st Cir. 1999). Here, if we were to slap down Judge Colville's "mixed" verdict, we would risk placing Pennsylvania citizens in the worse position of having state court judges reach guilty verdicts on the more serious charges as well, when the facts support conviction, rather than exercise leniency, in part to avoid a federal court's later finding of favorable termination. Hence, the result in this case conforms with the precedent and the purpose of the favorable termination element of malicious prosecution.[6]

---

[6]In *Heck*, the Supreme Court held that in any action under § 1983 in which "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence . . . the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." 512 U.S. at 487. However, if "the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff," the action may proceed. *Id.* We do not need to apply *Heck*'s test in

19

We acknowledge that caselaw in two other United States Courts of Appeals appears to favor Kossler's position as a general matter because those courts allowed malicious prosecution claims to proceed despite the plaintiffs' convictions on some but not all of the charges; however, closer examination reveals the same two-part analysis that we employ here being utilized by these other courts as well. For example, in *Janetka v. Dabe*, 892 F.2d 187 (2d Cir. 1989), the Court of Appeals for the Second Circuit held that a plaintiff whom a jury found not guilty of resisting arrest, but guilty of disorderly conduct, nonetheless could bring a common law malicious prosecution claim. The court reasoned:

> "Allowing police officers to add unwarranted misdemeanor charges to valid violation charges may force an accused to go to trial on the misdemeanor when he otherwise would plead to the violation. If the dispositive factor is whether, as the district court held, the charge resulting in acquittal 'arose out of events that occurred on the same occasion' as a charge resulting in conviction, then police officers could add unsupported serious charges to legitimate minor charges with impunity."

---

the present case because when a malicious prosecution claim is brought under § 1983, it is barred simply for lack of favorable termination.

*Id.* at 190.  We are not bound by *Janetka* and disagree with it insofar as it rejects an analysis that considers whether the charge resulting in acquittal arises out of the same conduct as the charge resulting in conviction.

In any event, we do not read *Janetka* that broadly because "Janetka was charged with two distinct offenses involving distinct allegations.  The disorderly conduct charge involved Janetka's actions directed at [an] unidentified hispanic man; the resisting arrest charge involved his actions directed at the officers' attempts to arrest him."  *Id.*  So even though the charges in *Janetka* arose out of events that occurred on the same occasion, they did not arise out of the same criminal conduct, and therefore, as more narrowly interpreted, *Janetka* does not conflict with our analysis here.  The distinction between charges arising from the same occasion and charges arising from the same conduct is also legally relevant because, to use concrete examples, the fact that Janetka yelled and pointed at a Hispanic man has no bearing on whether he struggled against the officers to resist arrest.  By contrast, here, the fact that Kossler intentionally struck Crisanti has a direct bearing on whether he assaulted the same Crisanti.  Without explicitly stating it did so, the *Janetka* court engaged in the same two-part inquiry that guides our analysis in the present case when it noted that the offenses not only contained distinct statutory requirements but also aimed to punish two different sets of conduct (even if the charges can be traced to events that occurred on one occasion).  *Janetka* is therefore distinguishable.

Similarly, in *Uboh v. Reno*, 141 F.3d 1000 (11th Cir. 1998), the Court of Appeals for the Eleventh Circuit held in a

21

*Bivens* action for malicious prosecution that the government's dismissal of charges for drug importation constituted favorable termination despite the plaintiff's earlier conviction for credit card fraud on charges that originated in the same indictment. The court determined:

> "The fact that the allegations concerning drug trafficking were included alongside other charges for which [the plaintiff] ultimately *was* convicted does not alter our conclusion that the prosecutor's decision to dismiss the drug counts constituted favorable termination, particularly under the facts of this case. . . .  In sum, we conclude that the dismissal of some charges of the indictment by the prosecutor – notwithstanding [the plaintiff's] earlier conviction on other charges set forth in the indictment – constituted termination in favor of the accused . . . ."

*Id.* at 1005-06 (citing *Janetka*, 892 F.2d at 190).

In *Uboh*, the charges which were dismissed by the prosecutor and which formed the basis of the plaintiff's malicious prosecution action (drug trafficking) aimed to punish separate conduct from those charges for which the plaintiff was convicted (credit card fraud). The significance of the fact that the offenses were distinct was not lost on the court, which stated as much and also noted:

> "Each of these offenses contains entirely different elements, neither charge is a lesser-included

22

offense of the other, and the charges were not tried as part of the same proceeding; in this context, it is reasonable to interpret the prosecutor's decision to not pursue the drug-related charges as consistent with . . . a finding of innocence on these specific counts of the indictment."

*Id.* at 1005. Thus the court in *Uboh* engaged in an analysis that parallels our approach by considering the conduct which the charged offenses aimed to punish. Only after the *Uboh* court determined that the charges for which the plaintiff was convicted and the charges which were dismissed aimed to punish separate conduct did it allow the malicious prosecution action premised on the latter charges to proceed.

We read both the *Janetka* and *Uboh* courts' focus on the differences between the offenses charged and the conduct leading to the charges as implying that, under different facts, when the offenses charged aim to punish the same misconduct, a simultaneous acquittal and conviction on related charges may not amount to favorable termination. The court in *Uboh* hinted at its agreement with that inference:

"Our consideration of these factors is not intended to convey any determination as to whether, given a different set of circumstances, dismissal of charges that *do* arise out of the same set of circumstances as the charges for which a defendant was convicted might constitute termination in favor of the accused. We only note

23

> that the unique combination of factors present in this particular case further bolsters our conclusion that voluntary dismissal of charges by the prosecutor is a favorable termination for purposes of malicious prosecution."

141 F.3d at 1005 n.8. Here we face a case in which the unique combination of factors is virtually the exact opposite of *Uboh*'s and therefore points to the opposite conclusion. As the *Uboh* court did, we leave for another day the establishment of universal contours of when a criminal proceeding which includes both an acquittal (or dismissal) and a conviction constitutes a termination in the plaintiff's favor. The facts in the case at hand, however, fall on the no-favorable-termination end of the spectrum. To reiterate, we do not hold that there is never favorable termination unless a plaintiff is acquitted of all charges. It is precisely on the facts of this case, in which the charges aim to punish one course of conduct, that we cannot conclude there was favorable termination.

> **B.** **The Inapplicability of Cases in Which All Charges Were Dismissed and Courts Analyzed Whether a Malicious Prosecution Claim Could Proceed Under the Probable Cause Element**

In response to the reasoning set forth above, Kossler cites a case that on its face has no applicability to the one at hand: *Johnson v. Knorr*, 477 F.3d 75 (3d Cir. 2007). In *Johnson*, the plaintiff, then a parolee, was involved in an altercation with an agent of the Pennsylvania Board of Probation and Parole. *Id.* at 77. As a result of the altercation, the plaintiff was charged with

simple assault, aggravated assault, making terroristic threats, and reckless endangerment. Subsequently and importantly, a state court dismissed all of the charges, so – unlike the present case – there was no question that the plaintiff had satisfied the favorable termination requirement. *Id.*

The plaintiff then initiated a § 1983 and state law action against several state actors on theories of false arrest, false imprisonment, and assault and battery. The district court granted summary judgment to the defendants, holding, inter alia, that there was probable cause to arrest the plaintiff for making terroristic threats, though it did not make a probable cause determination on the other bases for the plaintiff's arrest. *Id.* On the plaintiff's first appeal, we upheld the dismissal of his original claims and expressly upheld the district court's finding with respect to probable cause to arrest for making terroristic threats. We nevertheless remanded to allow the plaintiff to assert claims for malicious prosecution, which the district court had not allowed him to do. *Id.* at 77-78, 80.

On remand, the plaintiff amended his complaint to add a claim of malicious prosecution under § 1983 and state law. *Id.* at 80-81. The defendants again moved for summary judgment, which the district court again granted, this time on the basis that, because we had upheld the finding of probable cause for the terroristic threats charge, the plaintiff was barred from asserting a malicious prosecution claim on any of the criminal charges. *Id.* at 78. The plaintiff appealed a second time.

In the second appeal we framed the issue as "whether the finding that the agents had probable cause to arrest [the

25

plaintiff] on a charge of making terroristic threats without findings that they also had probable cause for his arrest on the other charges made against him defeats [the plaintiff's] cause of action for malicious prosecution on the remaining charges." *Id.* Again, the question we answered in that case was whether the finding of probable cause on one charge prevented the claim for malicious prosecution with respect to the other charges, not whether the plaintiff's criminal proceeding terminated in his favor. Because all of the charges had been dismissed, there was no dispute that the proceeding ended favorably and thus *Johnson* involved an entirely different analysis than the one at issue here.[7]

Yet Kossler argues that we should analyze the favorable termination element exactly as we analyzed the probable cause element in *Johnson*. We do not agree with that approach. The favorable termination element and the probable cause element are distinct requirements that a malicious prosecution plaintiff must satisfy to prevail and therefore should not be conflated. Although *Johnson* employed a charge-by-charge analysis in the context of the probable cause element, it does not undermine our conclusion that the favorable termination element properly focuses on the proceeding as a whole. Because the favorable termination element was satisfied in *Johnson*, we were not faced with the concern that a ruling for the malicious prosecution

[7]Similarly, *Posr v. Doherty*, 944 F.2d 91 (2d Cir. 1991), discussed favorably by Judge Aldisert, is not on point because "all charges against [the plaintiff] were dismissed on the motion of the District Attorney." *Id.* at 94.

26

plaintiff would conflict with the results of a state court decision. Thus, in *Johnson*, we permitted a charge-by-charge analysis on its facts in order to assuage the fear that police officers tacked on unwarranted charges. In this specific context, we allowed the plaintiff as many opportunities to show an absence of probable cause as there were charges.

By contrast, watering down the favorable termination element to protect against tacking on additional charges is particularly inappropriate because it ignores the fact that a court, not simply prosecutors and their agents, has essentially endorsed the criminal proceeding. This would interfere with the "strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction." *Heck*, 512 U.S. at 484. Unlike the favorable termination element, the probable cause element does not have the effect of undoing another court's judgment, and therefore loosening the plaintiff's burden on that element does not carry with it the same undesirable ramifications. In short, these are two different elements, our caselaw has so held, and thus we are cautious not to categorically apply decisions covering one element to an analysis covering another.

Although we have already explained why our analysis of the favorable termination element need not mirror our approach to the probable cause element, we nonetheless note the considerable tension that exists between our treatment of the probable cause element in *Johnson* and our treatment of that element in the earlier case of *Wright v. City of Philadelphia*, 409 F.3d 595 (3d Cir. 2005). In *Wright*, the plaintiff faced charges of burglary, theft, criminal trespass, and criminal mischief for

27

breaking into a house in which she alleged that she was sexually assaulted. *Id.* at 596-98. City police officers conducted two separate investigations concerning the break-in and the sexual assault. *Id.* All of the charges brought against the plaintiff were eventually dismissed, so the favorable termination element was not at issue in this case. After concluding that there was probable cause to arrest and prosecute the plaintiff for criminal trespass based on the information available to the officers at the time of the arrest, we held: "Even though our discussion of probable cause was limited to the criminal trespass claim, it disposes of her malicious prosecution claims with respect to all of the charges brought against her, including the burglary." *Id.* at 604. Thus we determined that the existence of probable cause for the arrest – stemming from the existence of probable cause for at least one charge – precluded the plaintiff from proceeding with her malicious prosecution claim with respect to any of the charges brought against her.

Despite our clear statement in *Johnson* that the precedential status of *Wright* is not diminished, 477 F.3d at 82 n.9, we recognize that the holdings of these two cases are difficult to reconcile. Notwithstanding this difficulty, *Wright* and *Johnson* both illustrate that the analysis of malicious prosecution claims involving multiple charges is a fact-intensive one. Requiring a fact-based inquiry for the favorable termination element therefore conforms with the use of a fact-based inquiry revealed by those two precedents, even though *Johnson* and *Wright* are not directly applicable to the instant case. Beyond observing that the underlying facts drive the analysis of each malicious prosecution case – regardless of the element at issue – we do not rely on the approach taken in either

28

*Johnson* or *Wright*, as those cases were analyzed under the probable cause element of malicious prosecution whereas this case was analyzed under the favorable termination element.[8]

We reiterate that district courts need not reach the probable cause element unless they first make a finding of favorable termination after examining whether the proceeding as a whole indicates the innocence of the accused with respect to the conduct underlying all of the charges. Only if the favorable termination element is satisfied under this test must a district court engage in an analysis of the probable cause element and wrestle with the approaches set forth in *Johnson* and *Wright* to determine which provides the more appropriate framework to apply to a given set of facts. Addressing the malicious prosecution elements in this order may alleviate some of the difficulty district courts would otherwise encounter if they began their analysis with the probable cause element; however, we do not intend to suggest that the favorable termination element should always be addressed prior to the probable cause element. Because the probable cause element goes to the foundation of whether there were reasonable grounds for the

---

[8] Even assuming arguendo that *Wright* and *Johnson* are in unavoidable conflict, "[t]his Circuit has long held that if its cases conflict, the earlier is the controlling authority and the latter is ineffective as precedents." *Pardini v. Allegheny Intermediate Unit*, 524 F.3d 419, 426 (3d Cir. 2008). Accordingly, if one of those two cases must control for purposes of analyzing the probable cause element, it would be *Wright*, not *Johnson*, that controls.

initiation of the criminal proceeding, district courts may find it preferable to begin their analysis of a malicious prosecution claim with this element.

In the present case, the District Court chose to focus on Kossler's inability to demonstrate that his state criminal proceeding terminated favorably, but had the District Court instead focused its analysis on whether probable cause existed, it would have reached the same ultimate conclusion that Kossler's malicious prosecution claim could not proceed. The record reflects that Crisanti had probable cause to believe Kossler committed the offenses charged based on Crisanti's reasonable perception of the facts and circumstances surrounding Kossler's conduct in the parking lot outside of Donzi's on the night of the altercation. *See Beck v. Ohio*, 379 U.S. 89, 91 (1964) (stating that probable cause exists for an arrest if "at the moment the arrest was made . . . the facts and circumstances within [the officers'] knowledge . . . were sufficient to warrant a prudent man in believing that [the suspect] had committed or was committing an offense" (citations omitted)); *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000) (explaining that probable cause to arrest "exists if there is a 'fair probability' that the person committed the crime at issue"). In particular, the fact that Kossler intentionally made physical contact with Crisanti after exiting a bar provided probable cause for Cristanti to believe that the charged offenses had been committed.[9]   Therefore, had the District Court

_____

[9]In addition, Judge Colville's findings suggest that probable cause existed. Specifically, Judge Colville found that

30

analyzed Kossler's claims under the third element of malicious prosecution, it would have found that the existence of probable cause precluded his action from proceeding.  In sum, starting with either the favorable termination element or the probable cause element would have produced the same result that we affirm here today.

## IV.

Because Kossler's conviction for disorderly conduct is not indicative of his innocence of the misconduct which all three charges aimed to punish, we hold that his prior criminal proceeding did not terminate favorably to him and, consequently, his malicious prosecution action necessarily fails. Therefore, we will affirm the two orders of the District Court.

ALDISERT, Circuit Judge, with whom Circuit Judges SLOVITER, MCKEE and AMBRO join, dissenting in part and concurring in part.

Michael Kossler appeals from an order of summary judgment, entered by the District Court for the Western District of Pennsylvania, dismissing his state and federal malicious

---

Crisanti's actions were reasonable because "there were a lot of people moving around and there was a lot of involvement and anger and people were drinking"; Crisanti was the only one who "ha[d]n't been drinking all night" and he "obviously put himself at risk" trying to control a volatile situation; and Kossler did in fact intentionally "strik[e] the officer's hand away from him."

prosecution claims against Donzi's Bar and Police Officer Steven Crisanti. For the reasons that follow, I would affirm in part and reverse in part.

I.

To prove an action for malicious prosecution brought under 42 U.S.C. § 1983 or under Pennsylvania law, a plaintiff must establish, inter alia, that the "criminal proceeding ended in plaintiff's favor." Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003); Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 791 (3d Cir. 2000). Within this Court is a good faith disagreement as to whether Kossler has satisfied this element. The majority concludes that because Kossler was found guilty of disorderly conduct, it cannot be said that he met the "favorable termination" requirement of Donahue v. Gavin, 280 F.3d 371, 383 (3d Cir. 2002). I disagree. My conclusion is premised on an understanding of the jurisprudential anatomy of Pennsylvania's criminal offenses in general, and the summary offense of disorderly conduct in particular. In light of the substantial differences between a felony and a summary offense, I would not allow conviction of a summary offense to impede a malicious prosecution claim premised on acquittal of a felony, even where the two charges arose from the same incident.[10]

---

[10]We note that under Pennsylvania law the summary offense of disorderly conduct is not a "lesser included" offense of aggravated assault.

32

In our current struggle to determine the proper rule of law, we must remain true to our polestar that a rule of law is a "detailed legal consequence [attached] to a definite, detailed state of facts." Roscoe Pound, Hierarchy of Sources and Forms in Different Systems of Law, 7 Tul. L. Rev. 475, 482 (1933). In short-sleeves language this means that this case is fact-specific, limiting the issue to situations where a defendant is acquitted of a felony but convicted of the summary offense of disorderly conduct.

It is beyond cavil that the criminal charges of disorderly conduct and aggravated assault emanated from the same event – an altercation that took place in a parking lot near a Pittsburgh bar. On appeal, Kossler challenges only the dismissal of his malicious prosecution claims premised on aggravated assault. Reduced to its essence, then, the issue we must decide pertaining to the favorable termination element is very limited: May we conclude that the criminal proceeding against Kossler ended in his favor where he was acquitted of aggravated assault under 18 Pa. Cons. Stat. Ann. § 2702, a felony, but was convicted of disorderly conduct for "engag[ing] in fighting,"

33

under 18 Pa. Cons. Stat Ann. § 5503, a summary offense?[11] My answer is yes. My reasons follow.

## A.

Conviction of a summary offense does not "carr[y] a presumption that the underlying events leading to the conviction actually occurred," Phoenixville Area Sch. Dist. v. Unemployment Comp. Bd., 596 A.2d 889, 892 (Pa. Commw. Ct. 1991); does not entitle a defendant to a jury trial, Rule 454(B), Pennsylvania Rules of Criminal Procedure; is inadmissible in a subsequent civil proceeding, Folino v. Young, 568 A.2d 171, 173-174 (Pa. 1990); and, in the case of disorderly conduct or disturbing the peace, does not count toward a criminal history calculation under the United States Sentencing Guidelines, U.S.S.G. § 4A1.2(c).[12] Summary offenses are usually punished

---

[11]Under § 5503, the offense of disorderly conduct may also be a misdemeanor of the third degree "if the intent of the actor is to cause substantial harm or serious inconvenience, or if he persists in disorderly conduct after reasonable warning or request to desist." 18 Pa. Cons. Stat. Ann. § 5503(b). Here, however, Kossler was convicted only of the summary offense of disorderly conduct.

[12]The majority notes in response to my examination of the characteristics of summary offenses that the element of favorable termination requires disposition "'in a way that indicates the innocence of the accused.'" See Majority Op. Section III-A (quoting Gavin, 280 F.3d at 383). I do not mean

34

"only by fine" and "justifiably should be summarily handled." Commonwealth v. Koch, 431 A.2d 1052, 1054 (Pa. Super. Ct. 1981). By contrast, aggravated assault is a felony for which a term of imprisonment of more than ten years may be authorized. 18 Pa. Cons. Stat. Ann. §§ 2702(b), 106(b).

B.

I add that my views on the consequences of acquittal of a felony and conviction of a summary offense are admittedly at odds with the majority's thoughtful analysis of the relationship between these two offenses. See Majority Op. Section III-A ("[A] finding in federal court that the defendants maliciously prosecuted Kossler for the same conduct underlying the aggravated assault . . . charge[] does indeed conflict with Kossler's state court conviction [of the summary offense of disorderly conduct]."). Unlike my colleagues of the majority, I am impressed by and accept the reasoning of cases from the United States Court of Appeals for the Second Circuit.

In Janetka v. Dabe, 892 F.2d 187 (2d Cir. 1989), the court was faced with a scenario similar to ours – an appeal of a

---

to suggest that conviction of a summary offense "indicates the innocence of the accused." My suggestion is more modest: acquittal of a felony offense – which standing alone would be considered favorable termination – should not be rendered unfavorable merely because of a conviction of a summary offense, which does not carry the presumption that the underlying events leading to the conviction actually occurred.

35

denial of a malicious prosecution claim premised upon an acquittal of resisting arrest and a conviction of disorderly conduct. As a prelude to its discussion of the merits, the general comments of the court deserve our attention:

> Favorable termination is not so much an element of a malicious prosecution claim as it is a prerequisite to commencement of the action. See Munoz v. City of New York, 18 N.Y.2d 6, 10, 218 N.E.2d 527, 529, 271 N.Y.S.2d 645, 649 (1966) ("It is a kind of pre-condition to the later action, the sine qua non . . . ."); see also W. Keeton, D. Dobbs, R. Keeton & D. Owen, Prosser and Keeton On Torts § 119, at 874 (5th ed. 1984). The requirement of favorable termination ensures against inconsistent judgments. It also permits a finding that probable cause was lacking.

Id. at 189 (internal citations omitted). I associate myself completely with Janetka's reasoning:

> To hold that an acquittal does not constitute a favorable termination would be particularly inappropriate in this case, where the charge for which [the appellant] was acquitted was more serious than the one for which he was convicted. Resisting arrest is a "misdemeanor," see N.Y.Penal Law § 205.30 (McKinney 1988), punishable by a maximum prison sentence of one year, see N.Y.Penal Law § 10.00(4) (McKinney 1987). Disorderly conduct is a "violation," see

36

N.Y.Penal Law § 240.20 (McKinney 1989), punishable by a maximum prison sentence of 15 days, see N.Y.Penal Law § 10.00(3). Allowing police officers to add unwarranted misdemeanor charges to valid violation charges may force an accused to go to trial on the misdemeanor when he otherwise would plead to the violation. If the dispositive factor is whether, as the district court held, the charge resulting in acquittal "arose out of events that occurred on the same occasion" as a charge resulting in conviction, then police officers could add unsupported serious charges to legitimate minor charges with impunity.

Id. at 190.

Similarly, in Posr v. Doherty, 944 F.2d 91 (2d Cir. 1991), the Court of Appeals for the Second Circuit held that "we should not allow a finding of probable cause on [the charge of disorderly conduct] to foreclose a malicious prosecution cause of action on charges requiring different, and more culpable, behavior." Id. at 100. Although Posr addressed the probable cause element of malicious prosecution rather than the favorable termination element at issue here, the stated rationale is significant:

If the rule were [otherwise], an officer with probable cause as to a lesser offense could tack on more serious, unfounded charges which would support a high bail or lengthy detention, knowing that the probable cause on the lesser offense

would insulate him from liability for malicious prosecution on the other offenses.

Id.[13]

Where there has been acquittal of a felony and conviction of a summary offense of disorderly conduct arising out of the same event, this constitutes the necessary favorable termination element of a subsequent malicious prosecution claim.

## II.

My analysis of the favorable termination element, however, does not end my analysis of this case. To prove malicious prosecution, Kossler must also show that "(1) the defendants initiated a criminal proceeding; . . . (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Estate of Smith, 318 F.3d at 521.[14]

---

[13]Of course, there is an obvious distinction between the terms "lesser offense" and "lesser included offense."

[14]The fifth requirement is unique to malicious prosecution claims made under 42 U.S.C. § 1983.

38

Donzi's contends that it did not initiate the proceeding, and the District Court dismissed the malicious prosecution claims against Donzi's on this alternate ground. Kossler predicates his malicious prosecution claims against Donzi's on vicarious liability. This Court has held:

> A defendant in a [federal] civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (internal citations omitted). Because Kossler does not allege participation or actual knowledge and acquiescence on the part of Donzi's, I would affirm the District Court's dismissal of Kossler's federal malicious prosecution claim against Donzi's and, in this respect, express my agreement with the majority. But I cannot go further.

A.

Unlike the federal malicious prosecution claims, it appears that liability for malicious prosecution under Pennsylvania law may be imposed on the basis of respondeat superior. See, e.g., Butler v. Flo-Ron Vending Co., 557 A.2d 730, 737 (Pa. Super. 1989); Randall v. Fenton Storage Co., 182

39

A. 767, 768 (Pa. Super. 1936); Riddell v. Phila. Rapid Transit Co., 80 Pa. Super. 176 (1922). Donzi's contends that Crisanti did not initiate the criminal proceeding against Kossler, and relies on Gatter v. Zappile, 67 F. Supp. 2d 515 (E.D. Pa. 1999), where the district court dismissed a malicious prosecution claim against two police officers, observing, "Generally, it is the prosecutor, not the police officer, who is responsible for initiating a proceeding against a defendant." Id. at 521. The court in Gatter, however, proceeded to explain that "[a]n officer may . . . be considered to have initiated the criminal proceeding if he or she knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion." Id. (internal quotation marks and citation omitted). The facts of this case can be distinguished from those of Gatter, where the two police officer defendants "had no input into the decision to prosecute Gatter . . . ." Id.

Here, the argument is that Crisanti, the police officer, did in fact file criminal charges. Kossler alleges that "Crisanti, although he did not have probable cause or any reasonable suspicion to believe that Michael Kossler had committed the criminal offenses of aggravated assault and public intoxication, nevertheless filed criminal charges against Kossler for such criminal offenses." App. 37a.

The District Court entered summary judgment against Kossler. Drawing all inferences in favor of Kossler, however, I am unable to agree that no genuine issue of fact exists (a) as to whether Crisanti initiated the proceedings against Kossler and (b) whether Crisanti was no longer acting in the scope of his employment with Donzi's when he initiated the proceedings

40

against Kossler. These are issues for a fact-finder proceeding and are not appropriate for resolution at summary judgment.

\* \* \* \* \*

For the foregoing reasons, together with the majority, I would affirm the grant of summary judgment that dismissed Kossler's federal malicious prosecution claim against Donzi's. I would reverse, however, the grant of summary judgment dismissing Kossler's state malicious prosecution claim against Donzi's, as well as his federal and state malicious prosecution claims against Crisanti.

RENDELL, *Circuit Judge*, dissenting.

I agree more with Judge Aldisert's view as to the proper application of the malicious prosecution 'test' in the multi-crime setting than with the majority's, but must part company somewhat even with his view. Examining the five-prong test for malicious prosecution, I am struck by the language of the third, namely that the 'proceeding was initiated without probable cause'. Because probable cause is different for each offense, the word 'proceeding' must mean a prosecution for one offense, not the prosecution of multiple offenses.

And, 'proceeding' as used in the third prong must inform what 'proceeding' in the second prong means. The fact that the issue before us does not involve the probable cause prong, as such, is of no moment. The third prong nonetheless dictates that 'proceeding' in the second prong requires a crime-by-crime analysis. Accordingly, a defendant successful as to one of

41

several charged offenses should be permitted to challenge the charge for that one offense as malicious. If he can sustain all five prongs (which will perhaps be easier if the acquitted offense is the more egregious of the group, as is Judge Aldisert's construct) he should succeed. I am mystified as to why we conclude that a defendant acquitted of a crime should be categorically foreclosed from challenging the prosecution of that crime as malicious merely because it was grouped with others, or arose from a common set of facts. That intent does not spring from the language of the 'test', nor does it square with common sense. Again, if the defendant can prove the five factors necessary to prove malicious prosecution as to one offense among many, should he not be able to maintain, and be victorious as to, that claim? I suggest the answer is 'yes'.[15]

---

[15]I see no reason to abandon our precedent in Johnson v. Knorr, 477 F.3d 75 (3d Cir. 2007). There we fully appreciated the need to analyze the charges separately when a malicious prosecution claim is brought, as distinct from a false arrest claim. In Johnson we stated:

> Our result is not inconsistent with the principle that, in analyzing false arrest claims, a court to insulate a defendant from liability need find only that "[p]robable cause ... exist[ed] as to any offense that could be charged under the circumstances." *Barna v. City of Perth Amboy,* 42 F.3d at 819. Thus, we do not question the rule that there need not have been probable cause supporting charges for every offense for which an

42

officer arrested a plaintiff for the arresting officer to defeat a claim of false arrest. See *Wright*, 409 F.3d at 602-04. The rationale of this rule is that "[t]he existence of probable cause [for one offense] ... justifie[s] the arrest - and defeats [the plaintiff's] claim of false arrest - even if there was insufficient cause to arrest on the [second offense] alone." *Edwards v. City of Philadelphia*, 860 F.2d 568, 576 (3d Cir. 1988). However, a cause of action for malicious prosecution may be based on the prosecution of more than one charge, and the validity of the prosecution for each charge comes into question inasmuch as the plaintiff was subject to prosecution on each individual charge which, as we have noted, is likely to have placed an additional burden on the plaintiff.

Overall, we are satisfied that notwithstanding the rule when a plaintiff is pursuing false arrest charges, a defendant initiating criminal proceedings on multiple charges is not necessarily insulated in a malicious prosecution case merely because the prosecution of one of the charges was justified.

477 F.3d, at 84-85.

The majority here seems to be proceeding under a "false arrest" theory, and ignoring persuasive precedent regarding

43

Therefore, I would reverse and remand for further proceedings.

---

claims for malicious prosecution.