NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3048
_____

AMELIA ANASTASIA,
*Appellant*

v.

CUSHMAN WAKEFIELD; CITIGROUP, RP; CITIGROUP REALTY SERVICES;
BRUCE COBB
_____

On Appeal from the United States District Court
for the District of New Jersey (Civil Action No. 08-cv-1880)
District Judge: Honorable Jose L. Linares
_____

Submitted Under Third Circuit LAR 34.1(a)
October 26, 2011
_____

Before: SLOVITER, GREENAWAY, JR., *Circuit Judges*,
and POLLAK,* *District Judge*

(Filed: December 15, 2011)
_____

OPINION
_____

* Hon. Louis H. Pollak, Senior Judge, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

POLLAK, *District Judge*.

Amelia Anastasia appeals from summary judgment in favor of the defendants, Cushman & Wakefield ("C&W") and Citicorp, on her claim that the conduct of Citicorp employee Bruce Cobb caused her to suffer a hostile work environment and a constructive discharge in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. §§ 10:5-1 to -49.[1] The District Court had diversity jurisdiction under 28 U.S.C. § 1332, and we have jurisdiction under 28 U.S.C. § 1291. Although our review is plenary, we will affirm for substantially the reasons given by the District Court.

## I.

We write primarily for the parties and will therefore be brief. By way of pertinent background, C&W is a commercial real estate company that managed several Citicorp offices in New Jersey. In 2001, Anastasia was hired to work for C&W at Citicorp's office in Weehawken, New Jersey. She was officially supervised by David Hardy of C&W, but she commonly received day-to-day assignments from Bruce Cobb of Citicorp.

On April 18, 2006, over a private lunch, Cobb informed Anastasia that he was romantically attracted to her and had been for years. The disclosure was prompted by Anastasia's discussion of a new relationship she had recently begun; as far as the record

---

[1] Anastasia's amended complaint named "Citigroup" and "Citigroup Realty Services" as defendants, and the captioning of this appeal continues that nomenclature. All sides agree that the appropriate corporate defendant is "Citicorp North America, Inc." The District Court referred to the defendant as "Citicorp," and so shall we. The distinction is of no significance to the appeal; we note it merely for clarity. Bruce Cobb was named as a defendant only on claims that are not pursued on appeal.

2

reveals, Cobb had never before said or done anything to convey any inkling of his feelings to Anastasia.

The attraction was not mutual. Anastasia told Cobb that she regarded him as a friend and mentor but not more. The two returned to the office, but Cobb obviously remained distraught. For example, he asked Anastasia to drive his car during the return trip to their office so that he could compose himself en route. Although the two worked together without incident for the remainder of the day, Cobb delayed leaving the office until Anastasia also left, and, while accompanying her to the parking lot, he gently grabbed her arm and thanked her for "being so understanding." That is the only alleged physical contact between them.

The following day, April 19, Anastasia sought a return to normalcy at work, but Cobb continued to trouble her. First, he sent her a text message in the morning thanking her again for her considerate behavior after his confession of unrequited romantic interest. Second, upon observing a photograph on Anastasia's computer of Anastasia and her new boyfriend, Cobb told her that the photograph used to bother him but that he was now "okay" with it, and he asked her for a copy of it. Third, he concocted a pretext to have Anastasia meet him alone in a break room, where he again told her how wonderful she was being.

Anastasia did not return to work after April 19. Early on April 20, she sent Cobb an email to inform him that in light of his recent conduct she had chosen to take a temporary leave of absence. Cobb responded by email again apologizing for the awkward situation he had put her in, thanking her for her understanding, and asking for

3

her forgiveness. Anastasia, by email, accepted Cobb's apology but reiterated that she needed some time away from the office.

On April 21, Cobb emailed her to apologize again for his "boorish behavior" and to encourage her to return to work. Anastasia accepted Cobb's apology but requested that he stop contacting her. Over the next several days, while Anastasia remained on leave, Cobb continued to call and send emails and text messages to her. On April 26, Anastasia reiterated to Cobb that this further contact was unwanted.

Anastasia then called Hardy, her C&W supervisor, and informed him of the situation. Hardy, in turn, contacted Grace Ben-Ezra, the human relations manager at C&W, who then called Anastasia on April 28. Recollections of the conversation differ; in the light most favorable to Anastasia, Ben-Ezra advised her not to return to her workplace because of Cobb's conduct. On May 3, C&W's manager for the Citicorp account instructed Cobb to cease all communication with Anastasia. Cobb did not contact her again after that date.

Citicorp and C&W subsequently explored transferring Cobb to another office but were unable to find an arrangement where Anastasia would not ultimately have to report to him in the chain of command. Anastasia remained on administrative leave until the end of June, receiving her salary and benefits. On June 30, 2006, C&W terminated her. The company treated the action as a voluntary resignation.

4

In April 2008, Anastasia filed the present action. As noted above, her suit included in pertinent part two claims against C&W and Citicorp for Cobb's conduct: hostile work environment and constructive discharge under the NJLAD.[2]

On June 10, 2010, the District Court granted summary judgment in favor of the defendants on both claims. As to the hostile work environment claim, the Court found that Cobb's conduct "was not severe or pervasive enough to establish a hostile work environment." *Anastasia v. Cushman & Wakefield*, Civ. No. 08-1880, 2010 WL 2520976, at *4 (D.N.J. June 10, 2010). With respect to the constructive discharge claim, the Court found that Cobb's conduct was not sufficiently "outrageous, coercive and unconscionable" to constitute a claim for constructive discharge. *Id.* at *5 (quoting *Jones v. Aluminum Shapes, Inc.*, 772 A.2d 34, 44-45 (N.J. Super. Ct. App. Div. 2001)).

## II.

"Our standard of review applicable to an order granting summary judgment is plenary." *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009) (en banc) (quoting *Nasir v. Morgan*, 350 F.3d 366, 368 (3d Cir. 2003)). Summary judgment is appropriate only when, drawing all factual inferences in favor of the non-moving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

---

[2] We assume for purposes of this appeal that C&W and Citicorp could be held responsible for Cobb's conduct. Both Citicorp (which directly employed Cobb but not Anastasia) and C&W (which directly employed Anastasia but not Cobb) dispute this. Given our disposition, there is no reason to address or resolve the defendants' arguments on this point.

## III.

Anastasia argues that a genuine dispute of fact exists as to whether she was exposed to sufficiently severe or pervasive harassment to demonstrate a hostile work environment under state law.

The NJLAD prohibits sex discrimination in employment. N.J. Stat. Ann. § 10:5-12(a). "Sexual harassment is a form of sex discrimination . . . ." *Lehmann v. Toys 'R' Us, Inc.*, 626 A.2d 445, 452 (N.J. 1993). And sexual harassment claims include both (i) *quid pro quo* sexual harassment, when an employer "attempts to make an employee's submission to sexual demands a condition of his or her employment"; and (ii) hostile work environment sexual harassment, when "an employer or fellow employees harass an employee because of his or her sex to the point at which the working environment becomes hostile." *Id.*

Anastasia pursues only the theory of hostile work environment as sexual harassment. A hostile work environment claim under the NJLAD requires the plaintiff to show conduct that is so "severe or pervasive" that a reasonable person in the protected class would believe that "the conditions of employment are altered and the working environment is hostile or abusive." *Lehmann*, 626 A.2d at 453 (emphasis removed). Whether conduct is "severe or pervasive" for purposes of the NJLAD depends on, among other things, whether the conduct is frequent, whether it is physically threatening or merely verbally offensive, and whether it unreasonably interferes with plaintiff's job performance. *Godfrey v. Princeton Theological Seminary*, 952 A.2d 1034, 1045 (N.J. 2008); *cf. Baliko v. Int'l Union of Operating Eng'rs*, 730 A.2d 895, 903-04 (N.J. Super.

6

Ct. App. Div. 1999) (listing other factors). The conduct must be judged on a cumulative basis in light of the "totality of the relevant circumstances." *Godfrey*, 952 A.2d at 1045.

The District Court found *Godfrey* to be particularly persuasive as to the "severe or pervasive" element of a hostile work environment claim, and we agree. In that case, two female students brought suit under the NJLAD for sexual discrimination in obtaining public accommodations, N.J. Stat. Ann. §10:5-4, -12(f), on the theory that the harassing conduct of a man affiliated with the seminary in which they were enrolled had created a hostile environment for them in the school's facilities. *See Godfrey*, 952 A.2d at 1036-38 & n.2, 1040-41.[3] The man, William Miller, subjected both students to unwanted advances, gifts, telephone calls, and requests for dates in a series of sporadic encounters spanning several years. *Id.* at 1038-42, 1046.

The New Jersey Supreme Court held that Miller's alleged conduct, viewed from the perspective of a reasonable woman, was not severe or pervasive enough to create a hostile or abusive environment, and thus that the plaintiffs had failed to state a claim for sexual harassment. *Godfrey*, 952 A.2d at 1046-47. As the Appellate Division noted in a passage endorsed by the state Supreme Court,

> Miller's repeated and unwelcome behavior was one of the socially
> uncomfortable situations that many women encounter in the course of their
> lives when someone in whom they are not interested persists in trying to

---

[3] Prior cases had already extended the hostile work environment theory to sexual harassment in non-employment contexts, like schools. *See L.W. ex rel. L.G. v. Toms River Reg'l Schs. Bd. of Educ.*, 915 A.2d 535, 547 (N.J. 2007). The same substantive standard—namely, whether the harassment is so severe or pervasive as to make a reasonable member of the protected class believe that the environment is hostile or abusive—applies regardless of whether the harassment occurs in a workplace setting or not. *Godfrey*, 952 A.2d at 1045.

7

persuade them otherwise. In our view, Miller's persistence did not cross the line and become actionable harassment.

*Id.* at 1047 (quoting *Godfrey v. Princeton Theological Seminary*, 2007 WL 1412095, at *7 (N.J. Super. Ct. App. Div. May 15, 2007)). "Persons who are socially tone deaf are not, by that characteristic, necessarily the equivalent of sexual harassers." *Id.*

Anastasia argues that *Godfrey* is distinguishable because it involved "random and unpredictable" encounters on a school campus, rather than an employment relationship. She instead likens the present case to *Colello v. Bayshore Community Health Services*, 2010 WL 1753164 (N.J. Super. Ct. App. Div. Apr. 28, 2010) (per curiam), in which a physician confessed his long-held romantic attraction to a nurse with whom he worked. *Id.* at *2. When she declined his invitation to have an affair, the physician "grabbed [her] and forcibly kissed her, thrusting his tongue in her mouth." *Id.* The Appellate Division found the physician's conduct "severe or pervasive" enough to raise a triable issue under state law. *Id.* at *8. The court reasoned that the conduct in *Godfrey* "pale[d] in comparison" to the physician's actions; unlike the physician, the male in *Godfrey* "never made any sexual remarks, and with the exception of two incidents where he lightly touched one of the plaintiffs on the arm to engage her attention, he never touched either of them and certainly never forced himself upon them." *Id.* at *9.

Bruce Cobb's conduct—in its severity and pervasiveness—is clearly more akin to the conduct in *Godfrey* than in *Colello*. Unlike the physician in *Colello*, Cobb never made any overtly sexual remarks and never attempted to grope or kiss the object of his unwanted affection. *Cf. Colello*, 2010 WL 1753164, at *9. Anastasia was able to

8

terminate Cobb's unwanted contact with her (after enduring two weeks of calls, emails, and text messages) by reporting it to other supervisors. *Cf. Godfrey*, 952 A.2d at 1047. And lastly, Cobb's messages, while no doubt unwanted and annoying, consisted largely of awkward apologies and efforts to salvage his professional relationship with Anastasia. That is not sexual harassment under New Jersey law.

Anastasia's second and final argument on appeal is that a genuine dispute of material fact remains as to whether her work conditions were sufficiently intolerable to ground a claim for constructive discharge. Under the NJLAD, "constructive discharge requires not merely 'severe or pervasive' conduct, but conduct that is so intolerable that a reasonable person would be forced to resign rather than continue to endure it." *Shepherd v. Hunterdon Developmental Ctr.*, 803 A.2d 611, 628 (N.J. 2002). The plaintiff must show "outrageous, coercive and unconscionable" conduct that is more egregious than what is required to establish a hostile work environment claim. *Id.* (quoting *Jones v. Aluminum Shapes, Inc.*, 772 A.2d 34, 45 (N.J. Super. Ct. App. Div. 2001)).

We have already concluded that Anastasia could not demonstrate that Cobb's conduct was sufficiently "severe or pervasive" to establish a hostile work environment claim under the NJLAD. As the District Court recognized, it stands to follow that Cobb's communications with Anastasia contained nothing objectively outrageous, coercive or unconscionable of the sort required for a claim of constructive discharge.

## IV.

For the preceding reasons, the judgment of the District Court will be affirmed.