NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4121
_____

LISA MIRSKY

v.

HORIZON BLUE CROSS AND BLUE SHIELD OF NEW JERSEY,
Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 2-11-cv-02038)
District Judge: Honorable Dennis M. Cavanaugh
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
July 11, 2014

Before: SMITH, VANASKIE, and SLOVITER, *Circuit Judges*

(Filed: September 26, 2014)
_____

OPINION
_____

VANASKIE, *Circuit Judge*.

Horizon Blue Cross Blue Shield of New Jersey ("Horizon") appeals the District

Court's grant of summary judgment in favor of Lisa Mirsky, a member of an employee

benefit plan ("the Plan") administered by Horizon and governed by the Employee

Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1101, *et seq.* Horizon

denied Mirsky's claim for inpatient medical treatment. After considering the record, including the unanimous consensus of Mirsky's treating physicians that continuing inpatient treatment was medically necessary, the District Court concluded that Horizon's coverage denial had been arbitrary and capricious. We will affirm the decision in Mirsky's favor, effectively awarding her benefits, but remand for the District Court to determine in the first instance the amount of benefits to which Mirsky is entitled under the terms of the Plan.

I.

We write primarily for the parties, who are familiar with the facts and procedural history of this case. Accordingly, we will provide only a brief synopsis of the relevant factual background.

After being diagnosed with bulimia and post-traumatic stress disorder, Mirsky became unable to function in her workplace, contemplated suicide, and subsequently was admitted to the Castlewood Treatment Center on June 7, 2010. Horizon authorized Mirsky's initial treatment at Castlewood as covered by the terms of the Plan and designated Magellan Health Services to administer her continued inpatient treatment.

Although Magellan approved reimbursement for Mirsky's care at Castlewood through July 6, 2010, it denied coverage for inpatient treatment following that date, claiming that such care was no longer medically necessary. Magellan reached this conclusion despite the consensus of Mirsky's treating therapists and physicians, who, in

2

the District Court's words, "unanimously agreed that she was not mentally fit to return to the community as an outpatient." App. 12.

Castlewood, acting on Mirsky's behalf, filed an internal appeal of the denial of coverage with Magellan on July 8, 2010. Magellan upheld its denial the following day and Castlewood requested a Second Level Appeal on July 12. The next day, an Appeal Subcommittee, consisting of physicians employed by Horizon, affirmed the denial. Mirsky then pursued an external appeal with Permedion, an Independent Utilization Review Organization (IURO) assigned by the New Jersey Department of Banking and Insurance. Mirsky submitted correspondence to Permedion that had not been presented to Horizon during the internal appeals process. Permedion completed its review on August 24, 2010 and upheld Magellan's denial of coverage for Mirsky's continuing inpatient treatment.

Mirsky remained in inpatient treatment at Castlewood through December 2010, at a cost of approximately $30,000 per month. She brought this action to recover the benefits due to her under the Plan for her continued inpatient treatment.

II.

The District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291. Before turning to the merits of the appeal, we must determine the proper scope of the record for our review. Horizon contends that the District Court erred by considering documents that Permedion reviewed during the external appeal of Mirsky's benefit denial, but which Horizon had not had the

3

opportunity to consider during its internal review. Horizon argues the scope of the record should be limited to the information Horizon reviewed during Mirsky's internal second level appeal. The District Court reasoned that it must "'look to the record as a whole,'" and review all "'evidence that was before the administrator when he made the decision being reviewed.'" App. 10 (quoting *Mitchell v. Eastman Kodak Co*., 113 F.3d 433, 440 (3d Cir. 1997) (abrogated on other grounds)). Although Permedion's review was conducted by an external body, the District Court concluded that the external review was "part of Horizon's clearly articulated review process," and evidence introduced during that appeal was therefore part of the record. *Id*.

We agree with the District Court that the record encompasses these documents, which include letters from Mirsky's treating physicians and therapists at Castlewood that are highly relevant to assessing whether the final decision to deny coverage for continued inpatient treatment was supported by substantial evidence. After denying Mirsky coverage under the Plan, Horizon was required by regulation to "[p]rovide for a review that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination." 29 C.F.R. § 2560.503-1(h)(2)(iv). The Plan provided for two internal appeals and one external review, during which Mirsky was permitted to supplement the record with information that had not been before Horizon at the time of the initial coverage denial. Because the external review was the last appeal conducted prior to the filing of this action,

4

information considered during that review was properly before the District Court and can be considered in this appeal.[1]

## III.

Turning to the merits of Horizon's appeal, we exercise de novo review of the District Court's grant of summary judgment and "employ the same legal standards applied by the District Court in the first instance." *Courson v. Bert Bell NFL Player Ret. Plan*, 214 F.3d 136, 142 (3d Cir. 2000). "We may affirm the order when the moving party is entitled to judgment as a matter of law, with the facts viewed in the light most favorable to the non-moving party." *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009). Because the terms of the Plan granted "discretionary authority to the administrator or fiduciary to determine eligibility for benefits or to interpret the terms of the plan," the District Court reviewed the denial of coverage under an arbitrary and capricious standard. *Estate of Schwing v. The Lilly Health Plan*, 562 F.3d 522, 525 (3d Cir. 2009). "An administrator's decision is arbitrary and capricious if it is without reason, unsupported by substantial evidence or erroneous as a matter of law." *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 (3d Cir. 2011) (quotations and citations omitted). This standard is "highly deferential." *Courson*, 214 F.3d at 142.

---

[1] As we conclude that the District Court properly considered the supplemental evidence presented to Permedion during the external review, we do not agree with Horizon's contention that the District Court instead should have remanded the claim to Horizon to consider this supplemental information in the first instance.

Mirsky's entitlement to coverage for the duration of her treatment at Castlewood was governed by the "Criteria for Continued Stay" set forth in the Plan. In this regard, the Plan provides:

> Criteria A, B, C, and either D or E must be met to satisfy the criteria for continued stay.
>
> **A.** Despite reasonable therapeutic efforts, clinical evidence indicates at least one of the following:
>
> • the persistence of problems that caused the admission to a degree that continued to meet the admission criteria (both severity of need and intensity of service needs), or
>
> • the emergence of additional problems that meet the admission criteria (both severity of need and intensity of service needs), or
>
> • that disposition planning, progressive increases in hospital privileges and/or attempts at therapeutic re-entry into the community have resulted in, or would result in exacerbation of the psychiatric illness to the degree that would necessitate continued hospitalization, or
>
> • a severe reaction to medication or need for further monitoring and adjustment of dosage in an inpatient setting, documented in daily progress notes by a physician.
>
> **B.** the current treatment plan includes documentation of diagnosis (DSM-IV axes 1-v), individualized goals of treatment, treatment modalities needed and provided on a 24-hour basis, discharge planning, and intensive family therapeutic involvement occurring several times per week (unless there is an identified valid reason why such a plan is not clinically appropriate or feasible). This plan receives regular review and revision that includes ongoing plans for
>
> timely access to treatment resources that will meet the patient's post-hospitalization needs.

6

**C.** the current or revised treatment plan can be reasonably expected to bring about significant improvement in the problems meeting criterion IIIA. This evolving clinical status is documented by daily progress notes, one of which evidences a daily examination by the psychiatrist.

**D.** the patient's weight remains <85% of IBW [Ideal Body Weight] and he/she fails to achieve a reasonable and expected weight gain despite provision of adequate caloric intake.

**E.** there is a continued inability to adhere to a meal plan and maintain control over urges to binge/purge such that continued supervision during and after meals and/or in bathrooms is required. In order to satisfy this criterion, there must be evidence that the patient is unable to participate in ambulatory or residential treatment.

App. 512.

The District Court thoroughly analyzed the "Criteria for Continued Stay" that bound Horizon and found that Mirsky should not have been denied coverage, as she had satisfied Criteria A through C, along with Criterion E, thereby establishing that continued treatment was medically necessary under the terms of the Plan. After our own comprehensive review of the record, we agree with the District Court's conclusion that the denial of continued inpatient treatment was not supported by "substantial evidence."

The District Court found that Mirsky had satisfied Criterion A, which required, *inter alia*, the patient to display "the persistence of problems that caused the admission to a degree that continued to meet the admission criteria . . . ," or "a . . . need for further monitoring and adjustment of [medication] dosages in an inpatient setting." *Id.* We agree with the District Court that Horizon did not present any evidence to rebut the opinions of Mirsky's treating physicians that continued inpatient care was necessary.

7

Mirsky's treating physicians urged that her lifelong struggle with bulimia and her history of relapses following periods of inpatient treatment indicated that "if she is discharged now, she is likely to relapse quickly . . . ," and that "if she is discharged now to standard outpatient care, she will relapse almost immediately and will require further inpatient treatment within the next 6 to 12 months, if not sooner." App. 221, 219. Although Horizon argued to the District Court that Mirsky had made progress as of July 6, 2010 by "'completing her meal plan, not purging, and even self portioning out food,'" App. 12, the District Court properly reasoned that Criterion A does not demand that coverage for inpatient care must cease as soon as a patient demonstrates some progress. Rather, Criterion A allows for continued coverage where patients demonstrate a "need for further monitoring." App. 512. There is no dispute that Mirsky's healthcare providers reasonably believed that she required additional monitoring and that the severe symptoms that justified her admission, as well as Horizon's decision to cover her healthcare costs, were persisting. Horizon did not present the District Court with "substantial evidence" undermining the conclusions of her healthcare providers.

The District Court also found that Criterion B of the Plan, which requires a patient to be engaged in a treatment plan which contains several specified components and receives "regular review and revision that includes ongoing plans for timely access to treatment resources that will meet the patient's post-hospitalization needs," had been indisputably satisfied. App. 512. We agree that the correspondence of Mirsky's treating physicians demonstrates that a viable treatment plan was in place, which included goals

8

for transitioning Mirsky into outpatient care. Castlewood Staff Psychiatrist Anna Jurec wrote that Castlewood intended to transition Mirsky out of inpatient care and into partial hospitalization "as soon as she is capable of autonomously maintain [sic] adequate nutrition without binging and purging, and anxiety and trauma are stabilized enough for client to manage without 24 hour structure." App. 268. Horizon has not directed us to anything in the record which would support the conclusion that Mirsky's treatment plan at the time of the coverage denial failed to satisfy Criterion B.

Criterion C requires that "[t]he current or revised treatment plan can be reasonably expected to bring about significant improvement in the problems" identified by Criterion A, and that the patient's clinical status is "documented by daily progress notes, one of which evidences a daily examination by the psychiatrist." App. 512. Horizon does not allege that Mirsky's treatment at Castlewood was unlikely to help improve her eating disorder, but instead argues that Mirsky had already achieved the maximum benefits of inpatient treatment—a claim unsupported by any of her treating physicians and belied by her history of relapses. Horizon likewise does not argue that Castlewood failed to maintain the appropriate records documenting Mirsky's "evolving clinical status." *Id.*

The terms of the Plan only required Mirsky to meet either Criterion D or E in order to demonstrate that continued care was medically necessary. Although the District Court concluded Mirsky did not meet Criterion D, it found that at the time of the denial, Criterion E was satisfied. Criterion E requires a showing that "[t]here is a continued inability to adhere to a meal plan and maintain control over urges to binge/purge such

9

that continued supervision during and after meals and/or in bathrooms is required," as well as "evidence that the patient is unable to participate in ambulatory or residential treatment." *Id.* Horizon contended that this requirement was not met, as Mirsky had not binged or purged in the inpatient setting since June 11, 2010. The District Court found this argument unconvincing, given that Mirsky's ability to binge and purge was restricted in the inpatient setting, where she was monitored around the clock and "'refrigerators, cabinets, and bathrooms were locked.'" App. 15.

We agree with the District Court. As discussed *supra*, the consensus of Mirsky's treating physicians was that her lifelong struggle with bulimia and her history of relapses following inpatient treatment indicated that she was not yet ready to transition into outpatient treatment at the time of the coverage denial. Evidence that Mirsky was not binging or purging under the restrictive conditions of inpatient care does not provide substantial support for the proposition—contradicted by all of her treating physicians— that Mirsky would not binge or purge once released from inpatient treatment. Therefore, Criterion E was satisfied, as Horizon has not presented substantial evidence that Mirsky would have been able to transition out of inpatient treatment at the time of the coverage denial.

Because Mirsky satisfied all of the requisite Criteria for demonstrating that continued inpatient treatment was medically necessary, Horizon's denial of coverage was

10

arbitrary and capricious. Therefore, we will affirm the District Court's grant of summary judgment in favor of Mirsky on her ERISA claim.[2]

## IV.

Horizon next contends that the District Court erred by awarding Mirsky compensatory damages for the total cost of her inpatient care at Castlewood through December 2010. Contrary to Horizon's argument, the District Court did not award compensatory damages to Mirsky. Instead, its order simply granted summary judgment in favor of Mirsky on her claim for benefits for her continued inpatient care after Horizon discontinued coverage. The District Court, however, made no determination as to the dollar value of the benefits due Mirsky. Accordingly, we will remand the matter to the District Court to determine the amount of benefits due to Mirsky under the Plan.[3]

---

[2] Horizon's argument that Mirsky lacks standing to bring an ERISA claim because her father paid for her continued inpatient care after Horizon's denial of coverage is specious. Mirsky was the Plan member who received treatment for her serious condition and sought coverage for that treatment. How Mirsky paid for her care at Castlewood after Horizon's wrongful denial of coverage is irrelevant. It is to Mirsky that Horizon has an obligation to pay benefits under the Plan, and Horizon cannot evade its obligation because Mirsky's father paid the bills that should have been paid by Horizon.

[3] On appeal, Horizon argues for the first time that Mirsky has not demonstrated that inpatient treatment remained medically necessary through December 2010. This argument was not raised before the District Court and should be treated as waived on remand.

11

V.

For the foregoing reasons, we will affirm the District Court's grant of summary judgment in favor of Mirsky, but remand for the District Court to determine the amount of benefits payable to Mirsky under the Plan.