**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-4169
_____

MONTE D. BLAIR,
                                            Appellant

v.

CITY OF PITTSBURGH; CITY OF PITTSBURGH BUREAU OF POLICE;
REGINA MCDONALD; NATE HARPER; OFFICER CHRISTOPHER KERTIS;
OFFICER ANDREW BAKER; DETECTIVE SCOTT EVANS;
COMMANDER THOMAS STANGRECKI

_____

On Appeal from the United States District Court for the
Western District of Pennsylvania
(District Court No: 2-14-cv-01473)
District Judge:  Honorable Mark A. Kearney

_____

Submitted under Third Circuit LAR 34.1(a)
on September 11, 2017

Before:  VANASKIE, RENDELL, and FISHER, Circuit Judges

(Opinion filed: September 28, 2017)

**RENDELL**, <u>Circuit Judge</u>:

Monte Blair asserts a variety of § 1983 claims arising from a late-night encounter he had with officers in Pittsburgh, and his subsequent arrest and prosecution. The District Court granted the officers qualified immunity on Blair's excessive force claim, and also granted the Defendants' Motion for Summary Judgment on Blair's false arrest, malicious prosecution, and *Monell* claims. Because we agree with the District Court's ruling, we will affirm.

**I. Facts**

While on patrol in their marked police van around 2:00 A.M. on a Sunday morning in 2012, Officers Christopher Kertis and Andrew Baker heard gunshots nearby. Officer Kertis drove toward the shooting. As Kertis drove toward the scene, both officers saw and heard gunshots coming from a dark-colored SUV. They briefly lost sight of the SUV as they drove toward it through a parking lot, but they continued to hear gunshots.

After exiting the parking lot and turning onto an alleyway, Kertis hit his vehicle's brakes because he saw an SUV—the one they believed had been involved in the shots they heard earlier—driving toward them. Kertis exited the van, but Baker remained in the vehicle. As the SUV drove at the police van, Baker pulled his gun out and fired two or

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

three shots from the window. The SUV continued driving straight toward the police van. It then maneuvered around the police van.

As the SUV was passing the police van, Kertis saw the driver with something in his hand which he said appeared to be a gun. He then saw a muzzle flash and heard a gunshot from the SUV. Kertis shot back at the SUV, and continued to fire as it sped away. Officer Baker exited the van and also shot at the SUV as it drove away. The Officers testified that they continued shooting at the car even after it passed them because of public safety concerns, namely that whoever had just shot at police officers continued to pose a danger to the public.

Paramedics then arrived at the scene of the first shooting—the shooting that the Officers had heard while on patrol, leading them down the alleyway—and found Ronald Thornhill with a gunshot wound in his arm. Paramedics transported Thornhill to the hospital, where detectives met with him. According to the detectives, during the course of the interview Thornhill identified Blair as the shooter.

The officers prepared a criminal complaint alleging that (1) Blair had shot Ronald Thornhill, and (2) Blair had shot at the police officers while charging them in his vehicle. The criminal complaint accused Blair of aggravated assault and attempted homicide against Kertis, Baker, and Thornhill. It also accused Blair of two counts of assault of a law enforcement officer and one count of carrying a firearm without a license. Based on this criminal complaint, a magisterial district judge issued an arrest warrant for Blair, and Blair was arrested.

Thereafter, Thornhill denied ever implicating Blair in his shooting. The Commonwealth withdrew the aggravated assault and attempted homicide charges related to the Thornhill shooting. But a Judge found Blair guilty of two counts of aggravated assault based on the encounter with the officers in the alleyway, and on charges relating to prohibited possession of a firearm. However, he found Blair not guilty of the remaining charges.

## II. Analysis[1]

(1) Excessive Force

Blair first claims that Officers Baker and Kertis employed excessive force by firing at his vehicle, as it drove away, in violation of his Fourth Amendment rights.

The District Court properly granted the Officers qualified immunity on this claim. Qualified immunity is appropriate if the officers' conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Berg v. Cty of Allegheny*, 219 F.3d 261, 272 (3d Cir. 2000) (internal quotation marks omitted). "[E]xisting precedent must have placed the statutory or constitutional question confronted by the official *beyond debate*." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014) (emphasis added) (internal quotation marks omitted).

Our precedent instructs that the Officers' conduct did not violate Blair's clearly established constitutional rights. In a number of cases, the Supreme Court has granted

---

[1] We have appellate jurisdiction under 28 U.S.C. § 1291. The District Court had jurisdiction under 28 U.S.C. §§ 1331 & 1343. We exercise plenary review over the District Court's grant of summary judgment. *Fields v. City of Philadelphia*, 862 F.3d 353, 357 (3d Cir. 2017).

qualified immunity when officers shot and killed fleeing criminal suspects, when there were grounds to believe that the suspect posed an actual serious threat to public safety based on the suspect's conduct. *Plumhoff*, 134 S. Ct. at 2021–22 (conduct occurred in 2004); *Brosseau v. Haugen*, 546 U.S. 194, 194–98 (2004) (per curiam); *Mullenix v. Luna*, 136 S. Ct. 305, 309–10 (2015) (per curiam) (conduct occurred in 2010).[2]

Here, the Officers heard gunshots nearby. They pursued those shots, only to see an SUV driving at their marked police van. One of the Officers saw the vehicle's driver firing a gun at the Officers. Based on these facts, there were clearly grounds to believe that Blair posed a threat to public safety, an even greater threat than in other cases where the officers were granted qualified immunity. Blair does not distinguish the facts of his case from those where qualified immunity was granted such that we could find the Officers' conduct violated his rights in a manner that was "beyond debate." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011).[3]

Blair likens his case to *Abraham v. Raso*, 183 F.3d 279 (3d Cir. 1999), where we did not grant an officer qualified immunity (or even discuss the issue). There, an off-duty police officer pursued Abraham into a mall parking lot as Abraham fled from Macy's, where he had stolen some clothing. *Id.* at 283. Abraham hit another car as he was backing

---

[2] Blair has not shown that there emerged either "controlling authority" or "a robust consensus of cases of persuasive authority" contrary to these cases such that they do not control our analysis. *See Plumhoff*, 134 S. Ct. at 2023 (internal quotation marks omitted).
[3] Blair does state that in *Brosseau* and *Mullenix* the officers had initiated a traffic stop prior to opening fire. But this does not change our analysis, which centers on the public safety risk in the specific context the officers confronted.

out of his parking space; as he began driving forward, the officer shot and killed him. *Id.* at 283–86.

That case is unlike Blair's. To start, *Abraham* preceded *Mullenix*, *Brosseau*, and *Plumhoff*, in which the Supreme Court developed the contours of qualified immunity for excessive force claims against officers shooting fleeing suspects. Moreover, *Abraham* did not even discuss the issue of qualified immunity. Further, *Abraham* involved an off-duty officer's pursuit of a shoplifting suspect who had no gun: it was not at all clear that Abraham posed any threat to anyone at all. Here, while investigating shots fired, the Officers saw a vehicle approaching them down an alleyway, and saw Blair firing a gun at them. Clearly, the level of threat to public safety in Blair's case is not analogous to the threat presented in *Abraham*.[4]  Thus, the District Court properly granted the Officers qualified immunity.

(2) False Arrest

Blair pursues a claim for false arrest, because he was arrested, but ultimately charges were dropped against him for the shooting of Robert Thornhill. Blair contends on appeal that though he was convicted of some charges for which he was arrested, because other charges were dropped, he has a viable false arrest claim. He misunderstands the

---

[4] Blair's reliance on *Zion v. Nassan*, 556 F. App'x 103 (3d Cir. 2014) is similarly unavailing. That case is not precedential, and has no binding effect. Further, the threat level presented by the suspect in that case was also much lower than the threat the officers perceived that Blair presented: the suspect there was being followed for a broken taillight, had pulled over his vehicle, and was apparently not armed. *Id.* at 104–05.
    Blair further relies on *Tennesse v. Garner*, 471 U.S. 1, 11 (1985), where the Court explained that it is not always permissible to use deadly force to prevent the escape of a felony suspect. But that case emphasized that its limitations applied when there was no immediate threat to the officer or others. *Id.* Here, there was such a threat.

law. As the District Court explained, a defendant is insulated from § 1983 liability for false arrest where probable cause existed as to *any* offense that could have been charged under the circumstances. *Johnson v. Knorr*, 477 F.3d 75, 85 (3d Cir. 2007). Not only was there probable cause for the charge of aggravated assault against the Officers; Blair was, in fact, convicted of those aggravated assaults. He has no false arrest claim.

(3) Malicious Prosecution

Blair argues that the District Court erred in granting summary judgment to the Defendants on his malicious prosecution claims. While he seems to argue that all the charges were maliciously prosecuted, with the exception of firearms charges, Blair's primary claim is that the Government did not have probable cause to bring any charges related to Thornhill's shooting, and that in an affidavit of probable cause, an officer misrepresented Thornhill's statement implicating Blair.

To bring a malicious prosecution claim, a defendant must establish: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009) (en banc).

(i) Attempted Murder/Aggravated Assault of Officers & Assault on an Officer

7

As to the charges arising from his assault of the Officers, Blair's claim fails on the second prong: favorable termination. A malicious prosecution claim cannot be predicated on an underlying criminal proceeding which terminated "in a manner not indicative of the innocence of the accused." *Id.* at 187. Blair was convicted of aggravated assault, and so the verdict did not indicate his innocence on that charge.

However, the state court judge found Blair not guilty of attempted murder of the Officers or assault on a police officer. So, there was a mixed verdict. When that is the case, we examine the "entire criminal proceeding" and determine whether the judgment indicates "the plaintiff's innocence of the alleged misconduct underlying the offenses charged." *Id.* at 188. The findings of the state court do not indicate that Blair was innocent of the alleged misconduct underlying those charges, namely his attack of the Officers. On the contrary, Blair was found guilty of aggravated assault of the Officers. Thus, malicious prosecution claim on the charges related to his attack on the officers fails.

(ii) Attempted Murder/Aggravated Assault of Thornhill

Blair contends that he can nonetheless bring a malicious prosecution claim for the charges the Commonwealth withdrew—attempted homicide/aggravated assault of Thornhill. However, even though those charges terminated favorably for Blair, his claim fails because probable cause existed to charge him for the other offenses related to his assault on the officers.

When there are multiple charges, as here, if the charges are "totally intertwined," probable cause for one offense defeats a malicious prosecution claim for all offenses.

8

*Johnson*, 477 F.3d at 82 n.9; *cf. Startzell v. City of Phila.*, 533 F.3d 183, 204 n.14 (3d Cir. 2008) ("We need not address whether there was probable cause with respect to the remaining charges . . . for the establishment of probable cause as to any one charge is sufficient to defeat Appellants' Fourth Amendment claims.").

We agree with the District Court that the charges at issue here were "intertwined" as contemplated in *Johnson*. *Johnson* did allow a plaintiff to bring malicious prosecution claims despite the existence of probable cause for some the charged offenses. But that case spoke to "bifurcated" conduct, where additional spurious charges were tacked on or charged *after* the original arrest. 477 F.3d at 82 n.9. Here, there was no such bifurcated conduct. Probable cause as to some of the charges was beyond dispute. Thus, Blair's claim fails.[5]

(4) *Monell* liability

Blair's claim against the City of Pittsburgh fails because there was no underlying violation of his constitutional rights, *see Mulholland v. Gov't Cty. of Berks*, 706 F.3d 227, 238 n.15 (3d Cir. 2013), let alone a pattern of such violations.

### III. Conclusion

The District Court correctly granted the Officers qualified immunity, and granted the Defendants' Motion for Summary Judgment. We will thus affirm that Court's ruling.

---

[5] Further, Blair has not alleged, as he was required to do to avoid *Johnson*'s bar to his claim, that "the additional charges for which there might not have been probable cause . . . resulted in additional restrictions on his liberty beyond those attributable to the prosecution on the [] charges for which there was probable cause." *Johnson*, 477 F.3d at 86; *Gallo v. City of Phila.*, 161 F.3d 217, 222 (3d Cir. 1998) ("A plaintiff asserting a malicious prosecution claim must show some deprivation of liberty consistent with the concept of seizure." (internal quotation marks omitted)).