NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3316
_____

NATHANIEL MAYBIN,
                              Appellant

v.

DENNIS SLOBODIAN, DETECTIVE, INDIVIDUALLY, BADGE #9239
PHILADELPHIA POLICE DEPARTMENT SOUTHWEST DETECTIVE DIVISION;
FRANCESCO CAMPBELL, DETECTIVE, INDIVIDUALLY, BADGE #0724
PHILADELPHIA POLICE DEPARTMENT SOUTHWEST DETECTIVE DIVISION;
JULIUS R. CAESAR, POLICE OFFICER, INDIVIDUALLY, BADGE #4358
PHILADELPHIA POLICE DEPARTMENT; CHARLES VALLETTE, POLICE
OFFICER, INDIVIDUALLY, BADGE #9309 PHILADELPHIA POLICE
DEPARTMENT; CITY OF PHILADELPHIA
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-16-cv-01394)
District Judge: Honorable Anita B. Brody
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
June 12, 2018

Before: AMBRO, JORDAN, and HARDIMAN, *Circuit Judges*.

(Opinion Filed: June 21, 2018)

_____

OPINION[*]
_____

HARDIMAN, *Circuit Judge*.

After he was acquitted of attempted murder and aggravated assault, Appellant

Nathaniel Maybin Jr. (Maybin) filed a civil rights complaint against numerous parties

involved with his arrest and prosecution. The District Court entered summary judgment

for Defendants, holding there was probable cause to arrest Maybin and his constitutional

rights were not violated. We will affirm.

I

On February 20, 2014, a man named David Woods was attacked with a hammer

outside a deli at 49th Street and Lancaster Avenue in Philadelphia. Woods's friend

Bernard Williams gave chase, but the assailant ran away. Williams then rushed Woods to

the hospital, but Woods was unable to speak to police officers at that time. Williams told

the officers that the assailant was a "taller, thin" black male who had dropped a cell

phone while fleeing the scene. App. 73.

The lead investigator on the case was Philadelphia Police Detective Dennis

Slobodian. Slobodian determined that the subscriber associated with the phone in

question was "Maybin, N." App. 69. According to the Pennsylvania Department of

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

Transportation, there were two matches for "Maybin, N.": a "heavier, older gentleman" named Nathaniel Maybin Sr., and his son, Appellant Nathaniel Maybin Jr., who was 6'4" tall and wore a "green military style jacket" in his driver's license photograph. *See* App. 69–70, 73.

Later that day, Slobodian and Detective Francesco Campbell interviewed Williams and his wife Victoria Carestio, who had also been in the vicinity at the time of the attack. Williams told Slobodian that the assailant was "black . . . like a Carmel color," had a "scruffy beard," was 6'1", and had been wearing "a green jacket." Supp. App. 2. Carestio, who was interviewed separately by Campbell, gave a different description. She thought the assailant was a 25- to 30-year-old "black male, light skin, 5'7", medium build, camouflage solid green coat, cream colored pants, afro style hair light brown, no facial hair." Supp. App. 5.

Slobodian and Campbell presented Williams and Carestio with an array of eight photographs in which Maybin's photograph appeared in the "number 1" position at the top-left corner. Maybin Br. 5; *see also* App. 117 (photo array). Slobodian admits that the "lighting dynamics" at play in Maybin's photograph were different from the other photographs. App. 95. Maybin argues that this made his skin tone appear "washed-out and far lighter" than his actual skin tone. Maybin Br. 5. Williams and Carestio each identified Maybin's photograph as that of the assailant; Carestio was "100 percent sure" Maybin was the perpetrator. Supp. App. 6.

3

Based on this information, Slobodian secured a warrant to search Maybin's home, but no evidence of the attack on David Woods was found there. Later that day, Slobodian swore an affidavit of probable cause for Maybin's arrest. The affidavit relied on the photo identifications, the name associated with the cell phone, and the similarity of the green jacket in Maybin's driver's license photo and the description of the assailant's clothing. The affidavit did not acknowledge the fruitless property search or the discrepancies between Maybin's actual height and skin tone and the eyewitnesses' accounts of those details. A magistrate issued a warrant for Maybin's arrest.

Later that afternoon, Maybin Sr. was interviewed by Detective James Brady. He told Brady that he had lost his cell phone outside the deli at 49th and Lancaster on February 20—the day Woods was assaulted. Maybin Sr. explained that he had gone to the deli to play the lottery because the check-cashing business where he had originally planned to play did not offer it. Brady took this information to Slobodian, who "believed [Maybin Sr.] was lying" about the phone because the sign outside the check-cashing business indicated that the lottery was available there. App. 83–84. Even though an employee at a nearby business confirmed that Maybin Sr. had inquired about his lost cell phone the day after Woods was assaulted, Slobodian still pursued Maybin, who turned himself in the next day.

At trial, Maybin presented video evidence showing that he was at a restaurant far from the scene when Woods was attacked. Accordingly, the trial judge entered a not

4

guilty verdict. Following his acquittal, Maybin filed the § 1983 complaint that is the subject of this appeal.[1]

II[2]

As Defendants correctly observe, "[p]robable cause is the keystone of this case." Defs.' Br. 14. On appeal, Maybin has focused on his malicious prosecution claim, which requires him to show that "the defendant initiated [a criminal] proceeding without probable cause" that deprived the plaintiff of his liberty.[3] *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007).

Maybin argues that this is precisely what Slobodian did when he failed to include in his affidavit of probable cause the following relevant pieces of exculpatory evidence: (1) the discrepancy between the eyewitnesses' descriptions of the assailant and Maybin's actual appearance, (2) the difference between Maybin's appearance in the photo array and his actual appearance, (3) the lack of evidence found during the search of Maybin's residence, and (4) the information corroborating Maybin Sr.'s claim that the phone

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.

[2] Our review of the District Court's summary judgment is plenary. *Halsey v. Pfeiffer*, 750 F.3d 273, 287 (3d Cir. 2014). Like the District Court, we must determine whether the evidence produced gives rise to a "genuine dispute as to any material fact." *Id.* (quoting Fed. R. Civ. P. 56(a)).

[3] Although "[t]he principal player in carrying out a prosecution . . . is not police officer but prosecutor," *Albright v. Oliver*, 510 U.S. 266, 279 n.5 (1994) (Ginsburg, J., concurring), an officer may be liable for malicious prosecution if he "influenced or participated in the decision to institute criminal proceedings," *Halsey*, 750 F.3d at 297.

5

belonged to him.

Analyzing the probable cause issue in the context of a claim for false arrest, the District Court rightly observed that Slobodian was "not free to disregard plainly exculpatory evidence, even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists." App. 12 (quoting *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 469 (3d Cir. 2016)). Although Slobodian was not obligated to disclose the exculpatory facts about the phone (which he learned of only after the warrant was issued), *see Dempsey*, 834 F.3d at 480, he should have included the other three exculpatory facts in his affidavit, *see Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000) ("[O]missions are made with reckless disregard if an officer withholds a fact in his ken that any reasonable person would have known . . . was the kind of thing the judge would wish to know." (alteration and internal quotation marks omitted)).

The District Court reconstructed the affidavit to include the exculpatory facts, *see Dempsey*, 834 F.3d at 474, but concluded that the facts "d[id] not . . . eliminate probable cause." App. 11. This was so because two witnesses identified Maybin in a photo array, the cell phone found at the scene belonged to "Maybin, N.," and the green jacket Maybin wore in his driver's license photo resembled the one worn by the assailant. The District Court acknowledged that, while the exculpatory evidence called the reliability of this other evidence into question, "it does not undermine [it] completely," and this degree of unreliability is "not fatal." App. 18 (citing *Dempsey*, 834 F.3d at 478); *see also Wilson*, 212 F.3d at 791–92 (identification from photo array was "strongest . . . evidence"

6

supporting probable cause despite other witness's identification of a different photograph and difference in suspect's and perpetrator's heights).

We agree with this well-reasoned determination. These facts were "sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Wilson*, 212 F.3d at 789 (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995)). Because the officers had probable cause to arrest Maybin, a reasonable jury could not find for him on his malicious prosecution claim. *See Johnson*, 477 F.3d at 82. And because Maybin failed to establish that his rights were violated, the District Court correctly held that Defendants were entitled to qualified immunity. *See Wright v. City of Philadelphia*, 409 F.3d 595, 604 (3d Cir. 2005). The District Court's summary judgment was proper.[4]

Maybin does not contest that if his malicious prosecution claim is not viable, his claims for civil conspiracy and punitive damages cannot survive. Maybin Br. 22. It follows that summary judgment was proper as to those claims as well.

\*     \*     \*

For the reasons stated, we will affirm the judgment of the District Court.

---

[4] The District Court reached the same conclusion as to the malicious prosecution claim, but it rested its decision on the ground that the officers did not "initiate[] a criminal proceeding" against Maybin. App. 20–22. Because "[w]e may affirm . . . on any ground supported by the record," we need not decide that issue. *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). "[H]ad the District Court instead focused its analysis on whether probable cause existed, it would have reached the same ultimate conclusion that [the] malicious prosecution claim could not proceed." *Kossler v. Crisanti*, 564 F.3d 181, 194 (3d Cir. 2009) (en banc).

7